Virgil L. DAVIS, Appellant,

v.

STATE of Indiana, Appellee.

No. 82S00-8701-CR-62.

Supreme Court of Indiana.

April 6, 1988.

Rehearing Denied June 2, 1988.

John D. Clouse, Michael C. Keating, Laurie A. Baiden Bumb, Evansville, for appellant.

Linley E. Pearson, Atty. Gen., Gary Damon Secrest, Deputy Atty. Gen., Indianapolis, for appellee.

GIVAN, Justice.

A jury trial resulted in the conviction of appellant of Criminal Confinement While Armed with a Deadly Weapon, a Class B felony; Criminal Deviate Conduct While Armed with a Deadly Weapon, a Class A felony; and Rape While Armed with a Deadly Weapon, a Class A felony. He received concurrent sentences of ten (10), thirty (30), and thirty (30) years, respectively. He was also found to be an habitual offender, for which his Rape sentence was enhanced by twenty (20) years for a total executed sentence of fifty (50) years.

The facts are: Around ten o'clock on the evening of February 2, 1986, 19-year-old D.D. walked alone from her apartment in Evansville to a Great Scot grocery store a few blocks away. While leaving the store, she stopped to rearrange all the groceries and her umbrella into one sack. She was then approached by appellant, who brandished a knife and told her she would not be hurt if she did what he told her. When D.D. replied by throwing the groceries at him, appellant angrily threatened to kill her if she did that again. After forcing D.D. into his car, appellant drove out of Evansville and Vanderburgh County into rural Warrick County, parking in two fairly isolated locations. While driving, appellant placed his knife on the far left of the dashboard where it remained all night.

After stopping his car, appellant ordered D.D. to remove her clothing, including her shoes and stockings, and get into the back seat. Appellant followed suit and performed oral sex on the victim and raped her. He repeated this performance three times in the course of the night, during which they both slept intermittently and twice got out of the car to urinate. D.D. testified she never tried to escape because she was unable, due to the heavy fog, to see anyplace to go, and was never sure that appellant was in fact asleep. Around dawn, two men in a truck stopped to investigate appellant's car. When appellant opened the door to talk to them, D.D. jumped from the car yelling she had been raped. One of the men helped her to their truck while the other drew a pistol and briefly questioned appellant, who stated his real name. Appellant hurriedly drove off just before the men decided to detain him.

D.D. was taken to a fire station where police were summoned. A vaginal smear analysis from the victim revealed the presence of sperm. She gave police the number from a temporary license tag she had seen on appellant's car. Tracing the number, police arrested appellant. His car was identified by D.D.'s two rescuers and still contained the victim's shoes, socks and jacket, as well as appellant's knife. Her three roommates had searched for her when she had failed to return from the store; upon finding her umbrella and the groceries strewn on the ground, they had contacted police. At trial, appellant testified he had been playing video games when D.D. approached him and agreed to go for a ride. Two State's witnesses testified they had seen appellant behaving suspiciously in front of the grocery store on the night in question.

Appellant contends because the acts resulting in his conviction for criminal deviate conduct and rape occurred in Warrick County, the trial court erred in overruling his motion to dismiss those counts for lack of proper venue in Vanderburgh County. Appellant cites art. 1, § 13 of the Indiana Constitution which gives criminal defendants the right to be tried "in the county in which the offense shall have been committed," and Ind.Code § 35-32-2-1(a), which states that "[c]riminal actions shall be tried in the county where the offense was committed, except as otherwise provided by law." Appellant concedes the sex offenses were part of a continuous chain of integrally related events which began in Vanderburgh County with criminal confinement and continued into Warrick County where the sex crimes were committed. He acknowledges that our cases decided under the former venue statute, Ind.Code § 35-1.1-2-1, held that venue for a chain of criminal events lay in any county in which any of the events occurred. Appellant argues, however, that the 1982 deletion of Ind.Code § 35-1.1-2-1(d), which read: "If the commission of an offense is commenced in one county and is consummated in another county, trial may be had in either of the counties," along with the adoption of "roving venue" provisions for certain crimes only, removed the statutory underpinnings from our cases granting "roving venue" in "chain of criminal events" offenses.

However, a closer examination reveals that the deleted provision quoted above was not requisite for our prior holdings finding venue in any county involved in a chain of related crimes; it merely codified the fact that a crime beginning in one county and ending in another county is committed in both counties. Failure to re-

enact that fact during recodification does not necessarily express legislative disapproval, particularly in light of the contemporaneous enactment of provisions granting "roving venue" in certain classes of crimes. *See* Ind.Code § 35–32–2–4. Our cases decided subsequent to the 1982 revision of the venue statute continue to hold that "[w]here a crime commences in one county and is continued into adjoining counties, then the charge may be filed in any of the involved counties." *Kuchel v. State* (1986), Ind., 501 N.E.2d 1045, 1046. Where the defendant was charged with conspiracy, rape and confinement, venue for his prosecution for rape was proper in either the county where the rape was actually committed or in the county where the plan to rape was commenced and the victim abducted. *Floyd v. State* (1987), Ind., 503 N.E.2d 390. In the case at bar, venue was proper for the rape and criminal deviate conduct charges in Vanderburgh County, where the victim was forced into appellant's car. The trial court did not err in denying the motion to dismiss these counts.

■ Appellant contends the trial court erred in admitting into evidence State's Exhibit No. 32, a cash register tape receipt from Great Scot grocery store, dated February 2, 1986. He objected at trial that it constituted inadmissible hearsay, "introduced for the truth of the matters contained therein," and that no foundation had been laid by the State. The State in its brief concedes the exhibit constituted hearsay evidence of the victim's grocery purchase and that its admission without a proper foundation was error. However, the erroneous admission of evidence is reversible error only if it results in prejudice to the defendant. *Wisehart v. State* (1985), Ind., 484 N.E.2d 949, *cert. denied* (1986), 476 U.S. 1189, 106 S.Ct. 2929, 91 L.Ed.2d 556.

■ Appellant argues he was prejudiced by the admission of Exhibit No. 32 because it discredited his version of events, namely, that the victim, with no groceries, approached him and agreed to go for a ride. While the cash register receipt did tend to corroborate the victim's story, it

was merely cumulative of other evidence tending to prove the victim's purchase of groceries. The victim's three roommates each testified they found the victim's umbrella with the groceries in the parking lot, as did two Evansville police officers. In addition, photographic slides of the grocery items at the scene, and the items themselves, were admitted into evidence. Erroneously admitted evidence which is cumulative of other, properly admitted evidence does not establish the prejudice required for reversal. *Campbell v. State* (1986), Ind., 500 N.E.2d 174. Consequently, any error resulting from the admission of State's Exhibit No. 32 was harmless.

■ Appellant contends his convictions of criminal deviate conduct and rape as Class A felonies, that is, committed while armed with a deadly weapon, were not supported by the evidence. As appellant points out, his knife remained on his car's dashboard during the sexual assaults; he never repeated his initial threat to kill the victim if she disobeyed him; and she testified that her confusion as to how to escape in the fog from their secluded location was a greater factor in her decision to submit than was the knife. Appellant's contention would have some merit absent his initial show of deadly force. However, the evidence at trial showed that when appellant first abducted the victim from the Great Scot parking lot he used the knife accompanied by threats to kill her if she resisted again. Moreover, it was found that the sex crimes were committed in the course of a criminal confinement perpetrated while armed with a deadly weapon, during which appellant's knife was at all times at least constructively under his control. *See Lamb v. State* (1984), Ind., 462 N.E.2d 1025. The evidence was sufficient to support the jury's Class A felony verdict.

■ Appellant contends the trial court erred in failing to grant his motion for a new trial based upon newly discovered evidence. In his motion to correct error, appellant included the affidavit of a person to whom appellant was known only as "Lonnie." Unable to recognize appellant as the defendant at trial from news accounts referring to him as "Virgil L. Davis," the

affiant came forward only in response to newspaper advertisements seeking witnesses to the events involved in the case. The affidavit states that the affiant saw appellant on the night in question playing video games and talking in a friendly fashion with a girl in a bright purple jacket at the Great Scot grocery store. Appellant claims that in conjunction with the evidence at trial that the victim was wearing her University of Evansville Purple Aces softball jacket, the newly discovered evidence would add "tremendous credibility" to appellant's version that his encounter with the victim was not an abduction.

To gain a new trial based on newly discovered evidence, a defendant must show that the evidence: 1) has been discovered since the trial; 2) despite due diligence to discover it in time for the trial; 3) is material and relevant; 4) is not cumulative; 5) is not merely impeaching; 6) is not privileged or incompetent; 7) is worthy of credit; 8) can be produced on retrial; 9) will probably produce a different result. *Woods v. State* (1985), Ind., 484 N.E.2d 3; Ind.R.Tr.P. 59(A)(6).

The evidence submitted by appellant fails to satisfy at least one of these requirements. In assessing the probability of a different result, the trial court should consider the weight which a reasonable trier of fact would give to the proffered evidence and its probable impact in light of all the facts and circumstances shown at trial. *Clark v. State* (1978), 269 Ind. 90, 378 N.E.2d 850, *cert. denied,* 439 U.S. 1050, 99 S.Ct. 731, 58 L.Ed.2d 711. Considering its relatively light weight in the face of overwhelming evidence to the contrary adduced at trial, the new evidence "is clearly not sufficient to raise a strong presumption" that it would produce a different result upon retrial. *Woods, supra* at 6. The trial court did not abuse its discretion in denying the motion for a new trial.

The trial court is affirmed.

SHEPARD, C.J., and DeBRULER, PIVARNIK and DICKSON, JJ., concur.