**Danny RICHARDS, Appellant (Defendant Below),**

v.

**STATE of Indiana, Appellee (Plaintiff Below).**

No. 49S00–9509–CR–1105.

Supreme Court of Indiana.

June 13, 1997.

Aaron E. Haith, Indianapolis, for Appellant.

Jeffrey Modisett, Attorney General, Preston W. Black, Deputy Attorney General, Indianapolis, for Appellee.

SHEPARD, Chief Justice.

Appellant Danny Richards abducted an eight-year-old girl from her bedroom and sexually assaulted her. He was convicted of rape, a class A felony;[1] criminal deviate conduct, a class A felony;[2] burglary, a class B felony;[3] and criminal confinement, a class C felony.[4] Richards was also found to be a habitual offender. The trial court sentenced him to 45 years for rape and added 30 years for the habitual. It imposed a consecutive sentence of 45 years for deviate conduct, suspending five. The other sentences were concurrent, for a total of 115 years.

Richards presents the following issues on appeal:

I. Whether the evidence established that Richards threatened to use deadly force during the sexual assault;

II. Whether there was sufficient evidence to prove that he intended to commit a felony inside the victim's residence; and

III. Whether the trial court erred in sentencing Richards.

## I. Facts

On July 3, 1992, N.H.'s mother put her daughter to bed. She closed the bedroom window and drew the shade. During the early morning hours of July 4, the girl awoke when something touched her leg. Her window was open, and a man later identified as Richards was standing in the window directly above her bed. Richards grabbed her legs and pulled her out of the window. N.H. yelled for help and grabbed her blanket.[5] Richards put his hand over her mouth and said, "Shut up, or I'll kill you."

Richards carried her to his car and drove her to a secluded area near a scrap yard about three to four miles away. Richards put a blanket on the ground; told N.H. to lie down; and removed her underwear. Richards then covered her face with another blanket. The girl heard Richard's unzip his pants. She said, "No, please." Richards responded by saying, "Oh, its okay." He then rubbed his penis against her external genitalia and inserted his finger into her vagina.

After Richards finished, he put the blanket over N.H. and covered it with weeds and grass. Richards proceeded to his car where he started the engine and drove off. Fearful that he would run her over, N.H. ran into the bushes and hid. After Richards was gone, the victim covered herself with the blanket and began walking down the street. Meanwhile, N.H.'s mother noticed her daughter was missing and reported it to the police. A short time later, the police found N.H.

A physical examination revealed that N.H. had an abrasion under her right eye, multiple scratches on her back, and a recent abrasion on her hymen. Laboratory tests confirmed that there was definite sexual contact. A vaginal swab tested positive for sperm and semen stains found on the victim's blanket matched the DNA profile of Richards.

## II. Class A Convictions for Rape and Deviate Conduct

Appellant argues that there was insufficient evidence to support the jury's finding that the rape and criminal deviate conduct convictions were class A felonies. For rape and criminal deviate conduct to be class A felonies, the act must have been accomplished through the use of, or threat of,

1. Ind.Code Ann. § 35–42–4–1 (West Supp.1996).

2. Ind.Code Ann. § 35–42–4–2 (West Supp.1986).

3. Ind.Code Ann. § 35–43–2–1 (West 1986).

4. Ind.Code Ann. § 35–42–3–3 (West Supp.1996).

5. The mother heard a large bang and her daughter's cry, "Help, Mom." She decided the girl might be having a bad dream and did not go to check on her.

deadly force,[6] or committed while armed with a deadly weapon, or have resulted in serious bodily injury[7] to a person other than a defendant. Ind.Code Ann. §§ 35–42–4–1 through –2 (West Supp.1986). The appellant was not armed, nor did N.H. sustain a serious bodily injury. Thus, the evidence must support the jury's finding that the felonies were committed by the threat of deadly force.

■ Appellant argues that the only threat of deadly force in this case occurred when he took N.H. from her home. The force he exerted during the commission of the sexual assault, appellant says, was only the force necessary to commit the crimes of rape and criminal deviate conduct. The State contends that the appellant's threat to an eight-year-old victim when he pulled her out of the window, "Shut up, or I'll kill you," was sufficient to constitute the threat of deadly force for the commission of the two felonies. We agree.

Appellant engaged in a continuous criminal episode, beginning when he pulled the victim out of the window and culminating with her rape. The record shows that the victim was pulled from her window and driven to a secluded area three to four miles from her house. Upon arrival, she was promptly raped. The interval of time between the threat and the actual rape was not great. The jury could reasonably have concluded that the prior threat of deadly force was still in the forefront of the victim's mind and very real to her.

This case bears a resemblance to *Davis v. State*, 520 N.E.2d 1271 (Ind.1988). Davis abducted the victim at knife-point in a parking lot. He threatened to kill her if she did not do as he told her. Davis forced the victim into his car and drove to an isolated area. He placed the knife on the dashboard, where it remained the entire evening. He proceeded to rape her three times until she was able to escape. *Id.* at 1273. Davis

claimed that his convictions of rape and criminal deviate conduct as class A felonies were not supported by the evidence. We held that the knife was "constructively" under the defendant's control, thus the evidence was sufficient to support the conviction. *Id.* at 1274. While *Davis* is distinguishable from the case at bar in that Davis was armed with a deadly weapon (which makes rape and criminal deviate conduct A felonies) and Richards was not, our *Davis* holding implied that the prior threats would be sufficient to constitute the threat of deadly force for the rape and criminal deviate conduct felonies.

In *Davis*, the defendant argued that the knife remained on the dashboard all night and that he never repeated his initial threat to kill the victim. We stated that his "contention would have some merit absent *his initial show of deadly force.* However, the evidence at trial showed that when the appellant first abducted the victim from the Great Scot parking lot he used the knife accompanied by the threats to kill her if she resisted again." *Id* (emphasis added). Like the appellant in *Davis*, Danny Richards made an "initial show of deadly force" threatening to kill N.H.

A threat of deadly force is likely to make a greater impression on an eight-year-old child than on an adult. We have previously held that it is not necessary to exert the deadly force, rather it is "sufficient if the threat of deadly force is imminent enough to cause the victim to submit to the aggressor." *Pennington v. State*, 523 N.E.2d 414, 415–16 (Ind.1988). A jury could have reasonably concluded that the threat to kill the victim when she was removed from her bedroom was "imminent enough" in her mind to cause her to submit the appellant when she was raped just a few minutes later.

We, therefore, conclude that the evidence was sufficient to support the convictions as class A felonies.

---

**6.** "Deadly force" is "force that creates a substantial risk of serious bodily injury." Ind.Code Ann. § 35–41–1–7 (West 1996).

**7.** "Serious bodily injury" is defined as "bodily injury that creates a substantial risk of death or that causes serious permanent disfigurement, un-

consciousness, extreme pain, or permanent disfigurement, unconsciousness, extreme pain, or permanent or protracted loss or impairment of the function of a bodily member or organ." Ind. Code Ann. § 35–41–1–25 (West 1986).

### III. Sufficiency of the Evidence for Burglary

Appellant argues that there was insufficient evidence to sustain his conviction for burglary because the State failed to establish that he broke and entered the victim's residence "with intent to commit a felony in it." The State points to the fact that Richards touched the victim while she was sleeping in her bed, removed her to a remote location, and raped her. The State argues that the jury could have reasonably concluded that the appellant intended to rape her inside the dwelling but changed his mind when she awoke and cried for help.

■ In reviewing a sufficiency of the evidence charge, we do not reweigh the evidence nor resolve issues of credibility. We will affirm the conviction if, after considering the probative evidence and reasonable inferences therefrom, a trier of fact could conclude that the defendant was guilty beyond a reasonable doubt. *Eveler v. State,* 524 N.E.2d 9, 11 (Ind.1988).

■ The conviction of burglary requires proof that the defendant broke and entered a building with "intent to commit a felony in it." [8] This element may not be established by proof of the breaking and entering by itself. *Timmons v. State,* 500 N.E.2d 1212, (Ind.1986); *Aikins v. State,* 443 N.E.2d 820 (Ind.1983). The State must prove intent to commit a specific felony. The information filed against Richards alleged that he intended to commit the felony of rape. Thus, the State had to prove that when Richards entered the building he had the intent to commit rape inside N.H.'s residence [9] which may be inferred from the subsequent conduct of the defendant *inside the premises. Eveler,* 524 N.E.2d at 11; *James v. State,* 472 N.E.2d 195, 197 (Ind.1985).

We have encountered cases where intent to commit rape was inferred from subsequent acts inside the dwelling. In *Henley v. State,* 519 N.E.2d 525 (Ind.1988), we held that there was sufficient evidence from which a jury could conclude that the defendant intended to commit rape when he entered the dwelling, where the defendant knocked the victim to the floor and started undressing her. *Id.* at 527. In *James v. State,* 472 N.E.2d 195 (Ind.1985), the defendant broke into the victim's house, shoved her onto the bed, forced her to place her arms around his, and told her repeatedly that he just wanted to "love her." We held that the evidence was sufficient for a reasonable jury to conclude that the defendant intended to commit rape. *Id.* at 197. In *Mason v. State,* 467 N.E.2d 737 (Ind.1984), the defendant was lying on his victim, holding her face with one hand and fondling her breast with the other, when her husband came in and chased him away. We held that these facts were sufficient for a jury to conclude that the defendant intended to commit rape inside the dwelling. *Id.* at 740.

By contrast, the perpetrator in this case barely entered the residence itself. There was no sexual contact at the residence, though there were serious physical acts against the victim (grabbing her leg and pulling her out of the window). The substantial and probative evidence tends to prove an abduction aimed at a sexual attack elsewhere. Accordingly, the State was entitled only to a conviction for the lesser included offense of residential entry. Ind.Code Ann. § 35–43–2–1.5 (West Supp.1996).

### IV. Sentencing

■ Finally, appellant contends that the imposition of consecutive sentences totaling 115 years is contrary to Ind.Code Ann. § 35–50–1–2(a)(West Supp.1994). When Richards was sentenced on April 20, 1995, the statute provided:

Except as provided in subsection (b), the court shall determine whether the terms of imprisonment shall be served concurrently or consecutively. The court may consider the aggravating and mitigating circumstances in IC 35–38–1–7.1(b) and IC 35–38–1–7.1(c) in making a determination un-

---

8. I.C. § 35–43–2–1 provides, in relevant part: "A person who breaks and enters the building or structure of another person, with intent to commit a felony in it, commits burglary, a Class C felony."

9. Had the State alleged criminal confinement as the felony in the burglary charge, the "intent to commit a felony therein" element might easily have been sustained.

der this subsection. The court may order terms of imprisonment to be served consecutively even if the sentences are not imposed at the same time. However, except for murder and felony convictions for which a person receives an enhanced penalty because the felony resulted in serious bodily injury if the defendant knowingly or intentionally caused the serious bodily injury, *the total of the consecutive terms of imprisonment, exclusive of terms under imprisonment under IC 35–50–2–8 [habitual offender statute] and IC 35–50–2–10 [habitual substance offender statute], to which the defendant is sentenced for felony convictions arising out of an episode of criminal conduct shall not exceed the presumptive sentence for a felony which is one (1) class of felony higher than the most serious of the felonies for which the person has been convicted.*

(Emphasis added). Under this 1994 provision, the maximum term for crimes arising from one "episode of criminal conduct" is generally the presumptive sentence for a felony which is one class higher than the most serious of felonies for which the defendant was convicted, exclusive of any enhancement for being a habitual offender.

Appellant contends that under Section 35–50–1–2(a) the maximum sentence he should have received was seventy years. He notes his convictions for class A felonies and argues that the next higher level of felony is murder. At the time Richards committed the crimes, the presumptive penalty for murder was forty years. Therefore, he says the maximum term would be forty years, plus an additional thirty for being a habitual offender. The State argues that the sentence is not manifestly unreasonable and should not be disturbed.[10]

The general rule is that the sentence in effect at the time of the commission of the crime is the proper penalty. *Patterson v. State*, 532 N.E.2d 604 (Ind.1988).

There is an exception to the general rule. The doctrine of amelioration provides that "a defendant who is sentenced after the effective date of a statute providing for more lenient sentencing is entitled to be sentenced pursuant to that statute rather than the sentencing statute in effect at the time of the commission or conviction of the crime." *Lunsford v. State*, 640 N.E.2d 59, 60 (Ind.Ct. App.1994) (citing *Vicory v. State*, 272 Ind. 683, 400 N.E.2d 1380, 1381–82 (1980)). The statute in question is clearly ameliorative. It was error for the trial court not to follow the procedures in Indiana Code Section 35–50–1–2.[11]

## V. Conclusion

We affirm the convictions for rape and deviate conduct. We remand with instructions to enter a conviction for residential entry instead of burglary and to enter a sentence of seventy years.

DICKSON, SULLIVAN, SELBY and BOEHM, JJ., concur.

---

**10.** In the alternative, the Attorney General argues that the presumptive penalty for murder at the time of Richards' April 1995 sentencing should apply. She says the presumptive term then was fifty years. Examining the legislature's two 1994 amendments to the murder statute, we have concluded that the presumptive term was forty years. *Smith v. State*, 675 N.E.2d 693 (Ind.1996).

**11.** The State in its brief did not question whether Richards engaged in a single criminal episode on July 3, 1992, nor do we. In 1995, the legislature defined "episode of criminal conduct" as "offenses or a connected series of offenses that are closely related in time, place, and circumstance." Ind.Code § 35–50–1–2(b) (West Supp.1996).