**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**MARK A. BATES**
Crown Point, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**NICOLE M. SCHUSTER**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| JEFFERY HAUGH, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 45A03-1106-CR-276 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE LAKE SUPERIOR COURT
The Honorable Salvador Vasquez, Judge
Cause No. 45G01-0402-FD-15

**March 8, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**VAIDIK, Judge**

**Case Summary**

Jeffery Haugh appeals his conviction for Class D felony failure to notify authorities and moving a body from the scene. Haugh contends that the trial court erred by denying the motion to withdraw his guilty plea and that his sentence is inappropriate in light of the nature of the offense and his character. Finding that the trial court did not err in denying the motion to withdraw Haugh's guilty plea and that Haugh has failed to persuade us that his sentence is inappropriate in light of the nature of the offense and his character, we affirm.

**Facts and Procedural History**

In June 2001, Haugh was living at the home of Ronald Hasse. On June 17, 2001, Michael Denvit was over at the house, and Hasse and Denvit did a lot of drugs. When Haugh awoke the next morning, he saw Denvit asleep on the couch. Hasse checked Denvit's pulse and realized that Denvit was dead.

Haugh wanted to call the police, but Hasse told Haugh that he could not leave, threatening to hurt him, his mother, and his dog if he did. Haugh knew that Hasse had a violent nature, so he believed the threats. Tr. p. 13. Hasse and Haugh then put Denvit's body into a car and drove it to Hasse's family farm in Lake County. Hasse asked for Haugh's help in burying the body, but Haugh refused, saying "this is too much, you're on your own." *Id.* at 14.

A few days later, Haugh told Hasse that he wanted to collect his things from Hasse's house. Hasse refused him permission but eventually allowed Haugh's mother to

collect Haugh's belongings and his dog from Hasse's house. Haugh never saw Hasse again.

Haugh later moved to Tennessee, where he was contacted by law enforcement two years after moving Denvit's body. Haugh drove back to Indiana and gave the police a statement. On February 10, 2004, the State charged Haugh with Class D felony failure to notify authorities and moving a body from the scene. Haugh was served with a warrant six years later on October 6, 2010. On April 6, 2011, Haugh pled guilty without a written plea agreement.

At the guilty plea hearing, the trial court advised Haugh of the rights that he was giving up by pleading guilty. The trial court also expressly told Haugh that he was giving up the viable defense of duress should he decide to plead guilty. Haugh indicated that he was aware of the rights and defenses he was giving up and that he still wanted to plead guilty. The trial court accepted the plea, and Haugh was remanded into custody.

On April 8, 2011, Haugh filed a Motion for Immediate Release of Defendant and for Withdrawal or Amendment of Guilty Plea. Haugh's counsel argued that after researching the matter, he had just become aware that the statute for failure to notify authorities and moving a body from the scene was amended after Denvit's death and Haugh should receive the benefit of that amendment under the doctrine of amelioration and the rule of lenity. The trial court determined that neither the doctrine of amelioration nor the rule of lenity applied and that Haugh was not able to withdraw his guilty plea, which was freely given and based upon a sufficient factual basis.

Haugh appeared at his initial sentencing hearing under the influence of alcohol, so the hearing was reset. At the second sentencing hearing, Haugh testified that he regretted his actions, regretted not informing the police, and was remorseful for his actions. *Id.* at 84, 88. He also said that while he currently lived in Tennessee, he still feared that Hasse would find him and harm him. *Id.* at 83-84, 94. Haugh's mother also testified, saying that her son was very sorry for his part in concealing Denvit's death. *Id.* at 69.

In reaching its sentencing decision, the trial court found as aggravating factors the number of times Haugh had been arrested, a charge was pending against Haugh at the time of the crime, and the fact that Haugh arrived at the first sentencing hearing under the influence of alcohol. *Id.* at 120-123. As mitigators, the trial court noted that Haugh had no felony convictions, he pled guilty in this case, and the circumstances of the crime were unlikely to recur. *Id.* Finding that the aggravating factors outweighed the mitigating factors, the trial court sentenced Haugh to one year at the Department of Correction and one year at Lake County Community Corrections, for an aggregate sentence of two years.

Haugh now appeals.

## Discussion and Decision

Haugh makes two arguments on appeal: (1) whether the trial court erred in denying the motion to withdraw his guilty plea and (2) whether the two-year sentence imposed is inappropriate in light of the nature of the offense and his character.

## I. Motion to Withdraw Guilty Plea

Whether a trial court should grant a motion to withdraw a guilty plea is governed by Indiana Code § 35-35-1-4(b), which provides:

4

> After entry of a plea of guilty . . . but before imposition of sentence, the court may allow the defendant by motion to withdraw his plea . . . for any fair and just reason unless the state has been substantially prejudiced by reliance upon the defendant's plea . . . . The ruling of the court on the motion shall be reviewable on appeal only for an abuse of discretion. However, the court shall allow the defendant to withdraw his plea . . . whenever the defendant proves that withdrawal of the plea is necessary to correct a manifest injustice.

On appeal, a trial court's ruling on a motion to withdraw a guilty plea carries with it a presumption of validity, and we will only review it for an abuse of discretion. *Weatherford v. State*, 697 N.E.2d 32, 34 (Ind. 1998), *reh'g denied*, *trans. denied*.

Haugh contends that there are three grounds on which the trial court abused its discretion in not granting his motion to withdraw his guilty plea: the doctrine of amelioration, ineffective assistance of trial counsel, and the defense of duress.

## A. Doctrine of Amelioration

It is well established that the criminal law that controls is that which is in effect at the time the crime is committed. *Smith v. State*, 675 N.E.2d 693, 695 (Ind. 1996). However, the doctrine of amelioration provides that "a defendant who is sentenced after the effective date of a statute providing for more lenient sentencing is entitled to be sentenced pursuant to that statute rather than the sentencing statute in effect at the time of the commission or conviction of the crime." *Richards v. State*, 681 N.E.2d 208, 213 (Ind. 1997) (quoting *Lunsford v. State*, 640 N.E.2d 59, 60 (Ind. Ct. App. 1994)).

The doctrine of amelioration was first adopted by this Court in *Lewandowski v. State*, 389 N.E.2d 706 (Ind. Ct. App. 1979). The purpose of the doctrine is to give an individual the benefit of a more lenient sentence if, before he is sentenced, the legislature enacts an ameliorative amendment and makes an express statement that the former

5

penalty for a proscribed act was too severe. *Davis v. State*, 395 N.E.2d 232, 234 (Ind. Ct. App. 1979). This is so because our penal code is based on principles of reformation and not vindictive justice. *Id.*

When Haugh was charged with the offense in 2004, the applicable statute, Indiana Code section 36-2-14-17, read:

> (a) A person who knowingly or intentionally fails to immediately notify the coroner or a law enforcement agency of the discovery of the body of a person who had died:
> > (1) from violence; or
> > (2) in an apparently suspicious, unusual, or unnatural manner
> commits a Class B infraction.
>
> (b) A person who without the permission of the coroner or a law enforcement officer, knowingly or intentionally moves or transports from the scene of death the body of a person who has died:
> > (1) from violence; or
> > (2) in an apparently suspicious, unusual, or unnatural manner
> commits a Class D felony.

Ind. Code § 36-2-14-17 (2004).

> In 2007, the statute was amended to read:
>
> (a) A person who knowingly or intentionally fails to immediately notify the coroner or a law enforcement agency of the discovery of the body of a person who:
> > (1) has died from violence;
> > (2) has died in an apparently suspicious, unusual, or unnatural manner; or
> > (3) has died at less than three (3) years of age;
> commits a Class B infraction. However, the failure to immediately notify under this subsection is a Class A misdemeanor if the person fails to immediately notify with the intent to hinder a criminal investigation.
>
> (b) A person who with the intent to hinder a criminal investigation and without the permission of the coroner or a law enforcement officer, knowingly or intentionally alters the scene of death of a person who has died:
> > (1) from violence; or

6

(2) in an apparently suspicious, unusual, or unnatural manner commits a Class D felony.

Ind. Code Ann. § 36-2-14-17 (West 2011).

In this case, the amended portion of Section 36-2-14-17(b) at issue is the Class D felony – the legislature added the element "with the intent to hinder a criminal investigation" and changed "knowingly or intentionally moves or transports from the scene of death the body" to "knowingly or intentionally alters the scene of death." In order to determine if this was meant to be an ameliorative statute, we must try to ascertain the legislature's intent. The interpretation of a statute is a question of law reserved for the courts, and we review such pure questions of law *de novo*. *Turner v. State*, 870 N.E.2d 1083, 1086 (Ind. Ct. App. 2007).

An amendment to a statute is usually presumed to evidence the legislature's intent to change the law unless it "clearly appears that the amendment was passed in order to express the original intent more clearly." *Id.* at 1087. We find that in this instance, the legislature's intent in enacting this amendment was to clarify and refine their original intent in creating this statute. The changes more precisely define the behavior that the legislature intended to criminalize by this statute – altering the scene of an unnatural death in order to hinder a criminal investigation. The addition of the intent element was a clarification so that only those who acted with the requisite criminal intent could be prosecuted under this criminal statute. And the broadening of behavior encompassed by this statute allowed it to more thoroughly achieve the intended objective of criminalizing any tampering with the scene of an unnatural death and not just the moving of a body.

7

As a result, there was no real fundamental change in the behavior that was criminalized. Nor was there any decrease in the maximum penalty under the statute, which would have been an indication that the legislature believed the former penalty was too severe. *See, e.g. Turner*, 870 N.E.2d at 1086; *Palmer v. State*, 679 N.E.2d 887, 892 n.4 (Ind. 1997) (the test for whether a statute is ameliorative is whether the maximum penalty under the new statute is lower than the maximum penalty under the old statute). We therefore find that the legislature intended for this amendment to be clarifying, not ameliorative. As a result, the doctrine of amelioration is inapplicable to this case.

## B. Ineffective Assistance of Trial Counsel

Haugh also contends that his guilty plea should be withdrawn due to "manifest injustice" due to ineffective assistance of trial counsel. He argues that his counsel had not conducted an investigation of the facts and law before advising him to plead guilty.

To prevail on an ineffective assistance of counsel claim, it must be shown that counsel's performance fell below an objective standard of reasonableness based on prevailing professional norms and that this deficient performance resulted in prejudice. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Grinstead v. State*, 845 N.E.2d 1027, 1031 (Ind. 2006). There is a strong presumption that counsel rendered adequate assistance, and to show prejudice, it must be shown that but for counsel's errors, the result of the proceeding would have been different. *Conder v. State*, 953 N.E.2d 1197, 1203 (Ind. Ct. App. 2011).

While Haugh claims that his counsel was ineffective, he provides no evidence that he would have done anything other than plead guilty had his counsel been more familiar

8

with the statute at issue in this case. He gives us no indication that if he had the benefit of more or different information that he would not have changed his plea. The only information on the record is that Haugh pled guilty of his own free will. There was no "manifest injustice" due to ineffective assistance of counsel.

### C. Duress Defense

Finally, Haugh contends that his plea was involuntary because he was convinced by counsel that he did not have the defense of duress available to him. We disagree.

Haugh testified at the guilty plea hearing that he acted under the fear of physical harm when he moved Denvit's body. Tr. p. 12-14. However, he also readily testified to facts that substantiated the charges brought against him, admitting that he did not notify the police when he realized that Denvit was dead and that he helped Hasse move Denvit's body out of the house. *Id.* After hearing this testimony, the trial court judge found that Haugh pled guilty "knowingly and voluntarily" and that the plea was "supported by a complete factual basis." *Id.* at 32.

Additionally, the trial court advised Haugh multiple times of the rights that he was giving up by pleading guilty, even going so far as to explicitly inform him that he would be giving up a potential duress defense by pleading guilty. *See id.* at 24 ("a possibility, I'm not saying it's a great or a winnable defense, but the possibility of a duress defense is giving up – given up as well. Mr. Haugh, do you understand that?"), 30 ("And to be perfectly clear, you're also giving up this possible statutory defense of duress. Do you understand all these rights that you're giving up by pleading guilty?"). Based on the record, Haugh was sufficiently advised that he was giving up this defense by pleading

9

guilty, and he made the decision to go forward with the guilty plea of his own free will. The plea was voluntary.

## II. Inappropriate Sentence

Haugh also contends that his executed sentence of two years is inappropriate in light of the nature of the offense and his character. We disagree.

Although a trial court may have acted within its lawful discretion in imposing a sentence, Article 7, Sections 4 and 6 of the Indiana Constitution authorize independent appellate review and revision of sentences through Indiana Appellate Rule 7(B), which provides that a court "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." *Reid v. State*, 876 N.E.2d 1114, 1116 (Ind. 2007) (citing *Anglemyer v. State*, 868 N.E.2d 482, 491 (Ind. 2007), *clarified on reh'g*, 875 N.E.2d 218 (Ind. 2007)). The defendant has the burden of persuading us that his sentence is inappropriate. *Id.* (citing *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006)).

The principal role of Rule 7(B) review "should be to attempt to leaven the outliers, and identify some guiding principles for trial courts and those charged with improvement of the sentencing statutes, but not to achieve a perceived 'correct' result in each case." *Cardwell v. State*, 895 N.E.2d 1219, 1225 (Ind. 2008). We "should focus on the forest— the aggregate sentence—rather than the trees—consecutive or concurrent, number of counts, or length of the sentence on any individual count." *Id.* Whether a sentence is inappropriate ultimately turns on the culpability of the defendant, the severity of the

crime, the damage done to others, and a myriad of other factors that come to light in a given case. *Id.* at 1224.

The sentencing range for a Class D felony is six months to three years, with one and one-half years being the advisory term. Ind. Code § 35-50-2-7. Here, the trial court sentenced Haugh to one year in the Department of Correction and one year in Community Corrections, for an aggregate sentence of two years. This sentence was within the statutory range.

Regarding the nature of the offense, there is nothing in the record that indicates that this sentence is inappropriate. The offense took place after a night of drinking and taking drugs. Haugh went along with Hasse's plan to bury Denvit's body on the Hasse family farm even though he claimed he did not want to. Although he claims he acted against his will and wanted to call the police instead of moving the body, Haugh never notified the authorities of the events of that day or the location of the body until he was found by law enforcement officials two years later living in Tennessee. The nature of the offense was serious.

Regarding his character, Haugh has a substantial history of arrests and misdemeanor convictions; this crime even took place while he had other charges pending against him. Appellant's App. p. 49-52. His recidivism shows that he was not deterred from criminal activity through his previous contact with the criminal justice system. Haugh also has a substance-abuse problem, being arrested multiple times for substance-abuse crimes, Tr. p. 96-97, 101, and even showing up intoxicated for his first sentencing hearing. *Id.* at 81. While Haugh alleges that his mother has investigated outpatient

11

alcohol-treatment programs so that he could finally receive treatment, *id.* at 88, this is not sufficient to warrant a mitigation of his sentence.

After due consideration of the trial court's decision, we cannot say that Haugh's sentence of two years is inappropriate in light of the nature of the offense and his character.

Affirmed.

ROBB, C.J., and NAJAM, J., concur.