## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Mar 30 2017, 5:44 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

John T. Wilson
Anderson, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Ian McLean
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Geraldine R. Jones,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

March 30, 2017

Court of Appeals Case No.
48A02-1601-CR-130

Appeal from the Madison Circuit Court

The Honorable Thomas Newman Jr., Judge

Trial Court Cause No.
48C03-1504-MR-566

**Pyle, Judge.**

# Statement of the Case

In this interlocutory appeal, Geraldine R. Jones ("Jones") appeals the trial court's denial of her motion to transfer venue of her charges of murder,[1] Level 3 felony kidnapping,[2] and Level 5 felony kidnapping.[3] At an evidentiary hearing on her motion to transfer venue, the State presented evidence that Jones kidnapped the victim of her offenses in Madison County and then murdered her in Lake County. On appeal, Jones claims that the State presented insufficient evidence that her alleged offenses constituted a single chain of events such that she may be tried in either county. She argues that venue should be transferred to Lake County where the murder allegedly occurred. Because we conclude that there was sufficient evidence that Jones' charged offenses constituted a single chain of events such that venue is appropriate in either county, we affirm the trial court's decision.

We affirm.

# Issue

Whether there was sufficient evidence to establish venue in Madison County.

---

[1] IND. CODE § 35-42-1-1(2).

[2] I.C. § 35-42-3-2(b)(2)(A).

[3] I.C. § 35-42-3-2(b)(1)(A).

# Facts

Around April 4, 2015, the mother of Samantha Fleming ("Fleming") received a call from Jones, who claimed to be a Department of Child Services ("DCS") employee. During the phone call, Jones told Fleming's mother that she needed to contact Fleming regarding Fleming's child. Fleming's mother gave Fleming's phone number to Jones, and Jones called Fleming that same day to introduce herself as Fleming's new DCS representative.

Two days later, Jones, dressed in business attire and carrying a binder, showed up at Fleming's house. She told Fleming's boyfriend, who answered the door, that Fleming had a court date in Gary, Indiana that she was about to miss. Fleming's boyfriend woke Fleming, and Fleming began to pack to go to Gary with Jones. Jones told Fleming to bring her baby with her because it would "look good," so Fleming did. (Tr. 28). Fleming and her baby then got into Jones' car to go to Gary.

Subsequently, Fleming contacted her mother by phone during the drive to Gary. Then there was about an "hour and fifty (50) minute lapse in time" during which Fleming did not contact her mother because she was supposedly in the court hearing. (Tr. 24). After that lapse of time, a text message was sent from Fleming's phone to her family that said "the Judge said I don't deserve my kid." (Tr. 24). A later investigation determined that Fleming did not have a court date that day or a scheduled meeting with a DCS employee.

[6] Around that same day, Fleming's boyfriend notified the Anderson Police Department that Fleming was missing. Detective Scott Sanderson ("Detective Sanderson") started a missing person investigation and discovered Jones' phone call in Fleming's phone records. He traveled to Gary, Indiana to find Jones on April 17, 2015. When he arrived at Jones' residence, her sister, Tomico Jones ("Tomico"), answered the door holding an infant. After talking with Tomico for a few minutes, Detective Sanderson began to believe that the infant was Fleming's baby. Tomico told him that Jones had flown to Texas to see her mother a few days before and had left the baby with her father. Tomico told Detective Sanderson that she did not believe that the baby was her sister's baby. Jones had previously told her family that she was pregnant with twins, but the family had not believed her. Then, after a period without contact, Jones had recently appeared with the baby and told them that the second twin had died.

[7] After relaying this information to Detective Sanderson, Tomico consented to a search of the house, and officers of the Gary Police Department conducted the search. Upon entering the house, they "could smell a foul smell of [a] decomposing body." (Tr. 13). They found Fleming's body wrapped in plastic in a plastic bin inside of a bedroom closet. They also found a hand cart in the kitchen with red stains on its wheels, several bottles of bleach, ammonia, and cleaning supplies. In addition, they determined that a rug and coffee table were missing from the living room.

[8] On April 20, 2015, the State charged Jones with murder, Level 3 felony kidnapping, and Level 3 felony criminal confinement in Madison County. The

State later amended the Level 3 felony criminal confinement charge to a Level 5 felony kidnapping charge.

[9] On July 28, 2015, Jones filed a motion to transfer venue, arguing that the Madison County trial court did not have jurisdiction to decide her case because the State had not filed her charges in the correct venue.[4] Specifically, she noted that in order to establish venue in Madison County, the State had to prove that a criminal offense had occurred there. Although the State had alleged that she had kidnapped Fleming in Madison County, Jones argued that Fleming had left Madison County on her own free will and that "there [was] speculation but not proof that the alleged victim was removed from Madison County by fraud, enticement, force or threat of force in order to establish the criminal offense of kidnapping." (App. 18). Absent proof that kidnapping had occurred in Madison County, she claimed that Madison County was not the correct venue for her charges.

[10] The State replied to Jones' motion to transfer venue and argued that the trial court should deny the motion because Madison County was the proper venue

---

[4] The title of Jones' motion was "Motion to Dismiss for Lack of Venue and Jurisdiction," and she presented it as a motion to dismiss. The State argued in response that it should be construed as a motion to transfer venue rather than a motion to dismiss because the issue of venue did not affect the trial court's jurisdiction. The trial court did not rule on that issue, but Jones does not claim that her motion was a motion to dismiss on appeal. Because she does not challenge the State's construction and because we agree that it should be considered a motion to transfer, we refer to it throughout this opinion as a motion to transfer. *See Wurster v. State*, 715 N.E.2d 341, 348 (Ind. 1999) (holding that a proper pre-trial motion challenging venue is "a motion to transfer rather than a motion to dismiss"), *reh'g denied.*

for the charges. It asserted that venue was proper in both Madison and Lake Counties because the kidnappings Jones was charged with had allegedly occurred in Madison County, and the murder had allegedly occurred in Lake County. As a result, it argued, Jones could be tried in either county.

[11] The trial court held hearings on Jones' motion on October 26, 2015 and November 9, 2015. At the hearings, the State submitted the above evidence, and Detective Sanderson admitted that he believed Fleming had been killed in Lake County. He said that he believed the murder had occurred in the one hour and fifty-minute interval after Fleming's drive to Gary and before a text had been sent to Fleming's family from her phone. Also at the hearings, the State argued that Jones' kidnapping and then murder of Fleming were a single chain of events, meaning that under Indiana precedent, venue was appropriate in either county. Fleming argued that the offenses were not a single chain of events and that venue was only appropriate in Lake County, where the murder had occurred. Thereafter, the trial court denied Jones' motion. Jones now appeals on an interlocutory basis.

## Decision

[12] On appeal, Jones argues that there was insufficient evidence to establish venue in Madison County. The trial court entered a general denial of her motion, so she does not challenge the trial court's conclusions. However, she challenges the State's proposition that her alleged kidnapping and murder offenses may be considered a single chain of events. She claims that the provisions of the Indiana venue statute concerning murder charges should govern the issue of

venue and that venue should exist in Lake County because the State believes the murder occurred there.

[13] In Indiana, a defendant has a constitutional and statutory right to be tried in the county in which an offense allegedly was committed. *Neff v. State*, 915 N.E.2d 1026, 1032 (Ind. Ct. App. 2009), *adhered to on reh'g*, *trans. denied*; I.C. § 35-32-2-1. Our supreme court has further clarified that "'[i]f the commission of an offense is commenced in one county and is continued into adjoining counties, then the charge may be filed in any of the involved counties.'" *Davis v. State*, 520 N.E.2d 1271, 1274 (Ind. 1988) (quoting *Kuchel v. State*, 501 N.E.2d 1045, 1046 (Ind. 1986), *reh'g denied*), *reh'g denied*. *See also Floyd v. State*, 503 N.E.2d 390 (Ind. 1987) (holding that where the defendant was charged with conspiracy, rape, and confinement, venue for his prosecution was proper in either the county where the defendant abducted the victim or the county where the defendant raped the victim).[5]

[14] In spite of this legal authority, venue is not a statutory element of the offense. *Neff,* 915 N.E.2d at 1032. Accordingly, the State need establish venue by only a

---

[5] Although our former venue statute, INDIANA CODE § 35-1.1-2-1, held that venue for a chain of criminal events lay in any county in which any of the events occurred, the Legislature deleted that language in 1982. *See Davis*, 520 N.E.2d at 1273. In *Davis*, Davis argued that the Legislature's deletion of that language indicated its disapproval of that basis for venue. *Id.* However, the Indiana Supreme Court held that "a closer examination reveal[ed] that the deleted provision . . . was not requisite for [its] prior holdings finding venue in any county involved in a chain of related crimes; it merely codified the fact that a crime beginning in one county and ending in another county is committed in both counties. Failure to reenact that [provision] during recodification does not necessarily express legislative disapproval . . . ." *Id.* at 1273-74. Instead, the supreme court reaffirmed that "'[w]here a crime commences in one county and is continued into adjoining counties, then the charge may be filed in any of the involved counties.'" *Id.* at 1274 (quoting *Kuchel*, 501 N.E.2d at 1046).

preponderance of the evidence and may consider circumstantial evidence. *Id.*; *Bryant v. State*, 41 N.E.3d 1031, 1037 (Ind. Ct. App. 2015) (stating that the State's burden of proof may be satisfied with circumstantial evidence). When a defendant argues that there is insufficient evidence of venue, we apply the same standard of review as for other claims of insufficient evidence. *Neff*, 915 N.E.2d at 1032. That is, "'we do not weigh the evidence nor resolve questions of credibility, but look to the evidence and reasonable inferences therefrom which support the conclusion of requisite venue.'" *Id.* (quoting *Morris v. State*, 409 N.E.2d 608, 610 (Ind. 1980)).

[15]   Jones does not dispute on appeal that if her offenses are a continuing chain of events, the State may establish venue in either county where an offense allegedly took place. Instead, she essentially argues that there was insufficient evidence that her charged offenses constituted a chain of events that started in Madison County such that her murder charge may be tried in Madison County even though the State believes it occurred in Lake County. Specifically, she contends that "there [was] no solid evidence given at the hearing . . . that the murder occurred in furtherance of the kidnapping" or "that there was not a time that the kidnapping ended before Fleming's death[,] making two separate crimes." (Jones' Br. 8). However, Jones does not provide any legal support for the contention that a defendant must have committed one offense "in furtherance" of another in order for the offenses to qualify as a single chain of events.

[16] Instead, we have previously held that "[i]f all charges are integrally related—in other words, if one thing led to another—then the crimes may be considered a single chain of events for purposes of venue." *Abran v. State*, 825 N.E.2d 384, 392 (Ind. Ct. App. 2005), *reh'g denied*, *trans. denied*. Thus, we must determine whether Jones' offenses were "integrally related" or whether "one . . . led to another." *Id*. *See also French v. State*, 362 N.E.2d 834, 839 (Ind. 1977) (finding that the victim's abduction from one county and later murder in another county were "integrally related" for purposes of venue).

[17] Based on this standard, we conclude that the State proved by a preponderance of the evidence that Jones' charges were a part of a single chain of events. The evidence in the light most favorable to the trial court's ruling is that Jones went to Fleming's Madison County home, posed as a DCS employee, and convinced Fleming to get into her car and accompany her to Gary by telling her that she had a court hearing in Gary that she might miss. She also convinced Fleming to bring her baby with her. It is not clear whether Jones intended to murder Fleming at the point when she allegedly committed this offense, but it is clear that the alleged kidnapping was "integrally related" to the murder because Jones could not have murdered Fleming in Lake County without first convincing Fleming to accompany her there. *See Archer v. State*, 7 N.E. 225, 227 (Ind. 1886) (concluding that the defendant's kidnapping of his victim was "requisite" to his later murder of the victim because "it was the seizure of the [victim], and the power obtained over him by that seizure, that enabled the [defendant] to conduct him to [a cave] and there kill him")*. Further, the State

presented evidence that both offenses occurred within a short space of time, indicating that the kidnapping led immediately to the murder. Because we conclude that the State presented evidence that the two offenses were integrally related such that they constituted a single chain of events, we likewise conclude that there was sufficient evidence to support venue in Madison County. Accordingly, we affirm the trial court's denial of Jones' motion to transfer venue.[6]

Affirmed.

Baker, J., and Mathias, J., concur.

---

[6] Jones also argues that venue in Lake County is preferable logistically because most of the potential trial witnesses live in Lake County. We will not address this argument because we are not required to consider trial logistics in our review of a trial court's decision regarding venue. *See* I.C. § 35-32-2-1.