## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Dec 30 2019, 10:32 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Rodney T. Sarkovics
Sarkovics Law
Carmel, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

J.T. Whitehead
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| LaShawn A. Tanks, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff.* | December 30, 2019 <br><br> Court of Appeals Case No. 19A-CR-910 <br><br> Appeal from the Hamilton Superior Court <br><br> The Honorable David K. Najjar, Judge <br><br> Trial Court Cause No. 29D05-1704-F6-2417 |

**Pyle, Judge.**

# Statement of the Case

LaShawn Tanks ("Tanks") appeals his convictions, following a jury trial, of Level 6 felony theft[1] and Level 6 felony fraud.[2] He argues that the evidence is insufficient to support his convictions because the State failed to: (1) establish venue in Hamilton County; and (2) prove his identity beyond a reasonable doubt. Concluding that the evidence is sufficient, we affirm his convictions.

We affirm.

# Issues

1. Whether there is sufficient evidence to establish venue in Hamilton County.

2. Whether there is sufficient evidence to prove Tanks' identity beyond a reasonable doubt.

# Facts

The facts most favorable to the verdict reveal that the State charged Tanks with Level 6 felony theft and Level 6 felony fraud in March 2017. Testimony at trial revealed that Kayla Stauffer ("Stauffer") had lunch at a Carmel restaurant on March 1, 2017 at approximately 2:00 p.m. Stauffer ordered her meal at the counter and used a Chase credit card to pay for it. Tanks, who is 6'5" tall and

---

[1] IND. CODE § 35-43-4-2.

[2] I.C. § 35-43-5-4.

weighs nearly 300 pounds, brought her food to her table. There were only two employees in the restaurant at the time of Stauffer's purchase, the man who had taken her payment at the cash register and Tanks.

[4] That same evening, Stauffer received an alert from Chase about recent use on her credit card. Stauffer noticed that she did not have the credit card in her possession and contacted Chase regarding the alert. Stauffer learned that several purchases had been made with her card that evening at Meijer and Hat World, both located on the west side of Indianapolis within a mile from Tanks' home. She told the Chase representative that she had not authorized any purchases that day other than her lunch and that she had not seen her credit card since she had made that purchase.

[5] The following day, Stauffer contacted the Carmel Police Department and reported the unauthorized purchases. Carmel Police Department Officer Michael Pitman ("Officer Pitman") was dispatched to the restaurant where Stauffer had purchased lunch. Officer Pitman testified that he had talked to the manager and had obtained a list of employees who had worked the previous day, which included Tanks. Timecards showed that Tanks had left the restaurant at approximately 5:20 p.m. the previous day. While speaking with the manager, Officer Pitman noticed Tanks, who was wearing a bright red cap, walk into the parking lot and move his light blue Ford SUV to an underground parking garage. When he returned to the restaurant, Tanks was no longer wearing the red cap.

[6] Officer Pitman further testified that he had gone to the westside Indianapolis Meijer and obtained surveillance photographs of the parking lot and store that had been taken at approximately 6:30 p.m. the evening of the unauthorized purchases. In the photographs, the officer noticed a man, whom he identified as Tanks, park the blue Ford SUV that he had seen Tanks move at the Carmel restaurant. The photographs also showed Tanks entering the store, walking throughout it, and purchasing almost $400 worth of items. Tanks was wearing a bright red cap. The Meijer surveillance photos were admitted into evidence at trial without objection.

[7] Also at trial, Carmel Police Department Detective Mark Paris ("Detective Paris") testified that he had gone to the westside Hat World to obtain surveillance video of the purchases made with Stauffer's credit card. Detective Paris identified the man making the purchases as Tanks after comparing Tanks' BMV photograph to the man in the video. The surveillance video was also admitted into evidence at trial without objection.

[8] At the close of the presentation of evidence, Tanks orally moved for a directed verdict on the theft charge based on the State's alleged failure to establish venue in Hamilton County. Tanks specifically argued as follows:

> They have not presented any evidence that my client committed an official, or excuse me, an essential element of the offense within the confines of Hamilton County. The only testimony that was given within, that occurred within Hamilton County does not have my client in possession of the card, touching the card, taking the card, only that she, Ms. Kayla Stauffer - I think I'm pronouncing that right - gave it to somebody else. She

doesn't know what happened to the card after that point. Even if, assuming is a big assumption, that the person in the security video for both Meijer and Hat World is my client, both of those things happened in Marion County, not Hamilton County. And I do not believe they have proven anything in Hamilton County.

(Tr. 114).

[9] The State responded that there was no dispute that Tanks had been present in the Hamilton County restaurant when Stauffer had purchased lunch with her credit card. He had clocked out of the Carmel restaurant at 5:20 p.m., and the unauthorized transactions had occurred an hour later in Indianapolis. According to the State, "there [was] no inference or determination from the evidence that [could] be made other than that in that short period of time [Tanks] removed that card from Carmel to Marion County and consummated those purchases." (Tr. 115). The State concluded that because "they are so closely woven in time and place . . . there [was] ample evidence in the record for the jury to find venue appropriate in Hamilton County." (Tr. 115). The trial court denied ' motion, and the jury convicted him of theft and fraud. Tanks now appeals.

## Decision

[10] Tanks argues that there is insufficient evidence to support his theft and fraud convictions because the State failed to: (1) establish venue in Hamilton County; and (2) prove his identity as the perpetrator of the offenses beyond a reasonable doubt. We address each of his arguments in turn.

### 1. Venue

Tanks first argues that there is insufficient evidence to establish venue in Hamilton County. Specifically, Tanks contends that there is "no evidence that Tanks touched or possessed the credit card, or took any act in furtherance of either charge, in Hamilton County." (Tanks' Br. at 8).

Tanks is correct that he has a constitutional and statutory right to be tried in the county where the offenses were committed. See Ind. Const. Art. I, § 13 and Ind. code § 35-32-2-1(a). If the commission of an offense begins in one county and continues into another county, the State may file charges in *any* of the involved counties. *Davis v. State*, 520 N.E.2d 1271, 1274 (Ind. 1988). The State is required to prove venue, although it is not an element of the offense. *Peacock v. State*, 126 N.E.2d 892, 897 (Ind. Ct. App. 2019). As a result, the State may prove venue by a preponderance of the evidence rather than by proof beyond a reasonable doubt. *Id.* Circumstantial evidence may be sufficient to establish proper venue. *Id.* We neither weigh the evidence nor resolve questions of credibility but look to the evidence and reasonable inferences drawn therefrom that support the conclusion of requisite venue. *Id*.

Here, we find ample circumstantial evidence to establish venue in Hamilton County. Specifically, our review of the evidence reveals that Stauffer used her credit card to purchase lunch at a Carmel restaurant at approximately 2:00 p.m. and had last seen her card at that time. Tanks, who was only one of two employees in the restaurant, clocked out at 5:20 p.m. and the unauthorized

purchases began approximately an hour later in Indianapolis. Contrary to Tanks' argument, this evidence and the reasonable inferences to be drawn therefrom supports the conclusion that Tanks touched or possessed the card in Hamilton County. The evidence is therefore sufficient to establish venue in Hamilton County.

## 2. Identity

[14] Tanks also argues that there is insufficient evidence to support his theft and fraud convictions because the State failed to prove his identity as the perpetrator of the offenses beyond a reasonable doubt. Our standard of review for sufficiency of the evidence claims is well settled. We consider only the probative evidence and reasonable inferences supporting the verdict. *Drane v. State*, 867 N.E.2d 144, 146 (Ind. 2007). We do not reweigh the evidence or judge witness credibility. *Id.* We will affirm the conviction unless no reasonable fact finder could find the elements of the crime proven beyond a reasonable doubt. *Id.* The evidence is sufficient if an inference may be reasonably drawn from it to support the verdict. *Id.* at 147. "Identity may be established entirely by circumstantial evidence and the logical inferences drawn therefrom." *Cherry v. State*, 57 N.E.3d 867, 877 (Ind. Ct. App. 2016) (citing *Bustamante v. State*, 557 N.E.2d 1313, 1317 (Ind. 1990)), *trans. denied*.

[15] Tanks specifically argues that "[n]one of the State's evidence reflected that the individual who possessed and/or used [Stauffer's] credit card was Tanks." (Tanks' Br. at 12). However, our review of the evidence reveals sufficient

evidence to support the jury's conclusion that Tanks was the individual who committed the offenses.

[16] Specifically, the evidence reveals that surveillance photographs from Meijer showed a man that Officer Pitman identified as 6'5" Tanks arriving in the parking lot. Tanks was driving the blue Ford SUV that Officer Pitman had seen him move from the Carmel restaurant parking lot to a nearby underground garage. The photographs also showed a man that Officer Pitman identified as Tanks making the unauthorized purchases with Stauffer's credit card. These photographs were admitted into evidence at trial without objection, and the jury had the opportunity to compare the man in the photographs to Tanks.

[17] In addition, the surveillance video from Hat World showed a man that Detective Paris identified as Tanks making the unauthorized purchases with Stauffer's credit card. The video was also admitted into evidence at trial without objection, and the jury had the opportunity to compare the man in the video to Tanks. This evidence is sufficient to prove Tanks' identity beyond a reasonable doubt and support his convictions. Tanks' argument that the images are not clear enough to identify him is an invitation for us to reweigh the evidence, which we cannot do. *See Drane*, 867 N.E.2d at 146.

[18] Affirmed.

May, J., and Crone, J., concur.