Matthew CONDER, Appellant–
Petitioner,

v.

STATE of Indiana, Appellee–
Respondent.

No. 49A02–1012–PC–1404.

Court of Appeals of Indiana.

Sept. 9, 2011.

---

Hillary Bowe Ricks, Indianapolis, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Ellen H. Meilaender, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

VAIDIK, Judge.

### Case Summary

Matthew Conder was found guilty in a bench trial of murder for kicking a man to death in a bar parking lot. He now appeals the denial of his petition for post-conviction relief. Specifically, he contends that after the trial court found him guilty of murder, his trial counsel was ineffective for filing a motion to reconsider in which he asked the court to reduce his murder conviction to voluntary manslaughter as a Class A felony, which the court granted. He says his counsel should not have conceded that shoes are a deadly weapon and that he was prejudiced because he was foreclosed from appealing the shoe and the

mens rea issues. We find neither deficient performance nor prejudice and therefore affirm the post-conviction court.

### Facts and Procedural History

The underlying facts of this case, taken from this Court's opinion on direct appeal, are as follows:

In the early morning hours of May 31, 2003, Indianapolis Police Department (IPD) officers responded to an emergency call from the Sawmill Saloon in Indianapolis, Indiana. Upon arrival, the responding officers discovered a white male, later identified as Preston Truett (Truett), lying dead in the parking lot. A security videotape of the activities inside the Sawmill Saloon that evening shows Truett and Conder sitting beside each other conversing and then exiting the bar together at approximately 3:12 a.m.

Police contacted Conder later that same day, and he gave the police a taped statement that night. In his statement, Conder told the police that he arrived at the Sawmill Saloon at around one in the morning. He had several drinks and, after exiting the bar with the rest of the remaining customers at closing time, Conder stood in the parking lot conversing with Truett. At some point, the two men began to argue, and Truett allegedly called Conder a "punk ass bitch" and pushed him. Conder then hit Truett, knocking him to the ground, and kicked him several times in the face. The autopsy of Truett's body later revealed that he suffered six blunt impact points, all but one of which were consistent with being struck with a fist or kicked, and that the cause of death was blunt force injuries of the head and neck. Before leaving the parking lot, Conder took Truett's wallet because "[he] wanted [Truett] to be as pissed off as [Conder] was when [Truett] woke up."

Police obtained consent to search Conder's house, where they found a number of items, including photographs, from inside Truett's wallet. The wallet itself was later retrieved from a sewer into which Conder had thrown it. The police also found the sneakers Conder had been wearing at the time of the incident, which he had cleaned with bleach in order to remove the blood on them.

On June 2, 2003, the State filed an information charging Conder with Count I, murder [while attempting to commit robbery], a felony, Ind.Code § 35–42–1–1; and Count II, robbery as a Class A felony, Ind.Code § 35–42–5–1. On November 5, 2004, the information was amended to include an additional count, Count V, murder, a felony, Ind.Code § 35–42–1–1.

On November 8, 2004, a bench trial was conducted, after which Conder was found guilty of theft, a Class D felony, as a lesser-included offense of Count II, robbery; and of Count V, murder. On November 16, 2004, Conder filed his Motion to Reconsider Guilty Finding on Amended Count [V] and To Enter Guilty Finding for Voluntary Manslaughter, a Class A Felony, as a Lesser Included Offense of Count I. In this motion, Conder requested that the trial court enter a finding of guilty to voluntary manslaughter rather than murder, arguing that, according to the facts of his case, his shoe constituted a "deadly weapon" for purposes of the voluntary manslaughter statute. *See* I.C. §§ 35–42–1–3, 35–41–1–8.[1] The State opposed

---

1. "A person who knowingly or intentionally kills another human being ... while acting under sudden heat commits voluntary man-

slaughter, a Class B felony. However, the offense is a Class A felony if it is committed by means of a deadly weapon." Ind.Code § 35–

Conder's Motion to Reconsider. On November 24, 2004, the trial court conducted a hearing on the motion. Following this hearing, the trial court granted Conder's Motion, entering his conviction as voluntary manslaughter rather than murder. On December 3, 2004, following his sentencing hearing, the trial court sentenced Conder to forty years for the voluntary manslaughter conviction and three years for the theft conviction, ordering that the two sentences be served consecutively.

*Conder v. State,* No. 49A02–0412–CR–1070, slip op. at 2–4, 833 N.E.2d 1104 (Ind.Ct.App. Aug. 17, 2005) (citations and footnote omitted).

On direct appeal, Conder raised two issues: whether the evidence was sufficient to support his conviction for voluntary manslaughter and whether the trial court abused its discretion in sentencing him. As for the first issue, we found that because Conder filed the motion to reconsider, in which he asked the trial court to find him guilty of voluntary manslaughter instead of murder, he "has waived any possible objection to the voluntary manslaughter conviction." *Id.* at 5. As for Conder's voluntary manslaughter sentence, we found it to be inappropriate and therefore reduced it from forty years to thirty years, making his aggregate sentence thirty-three years. *Id.* at 9–10.

In October 2006, Conder filed a pro se petition for post-conviction relief in which he alleged ineffective assistance of counsel. Specifically, Conder claimed that his trial counsel, Arnold Baratz, was ineffective for, among other things, filing the motion to reconsider in which he asked the trial court to reduce his murder conviction to voluntary manslaughter as a Class A felo-

ny by arguing that the shoe was a deadly weapon. *See* Appellant's App. p. 35 ("Conder maintains that counsel's filing the motion to reconsider was appropriate. However, counsel should **not** have argued that Conder's shoe was a deadly weapon."). An attorney later entered an appearance on behalf of Conder. A two-day hearing was held at which both Conder and Attorney Baratz testified. Attorney Baratz testified that after the trial court found Conder guilty of murder, he consulted Conder about filing the motion to reconsider. Nov. 18, 2009, P–C Tr. p. 14–16. The trial court entered extensive findings of fact and conclusions thereon denying Conder relief. The relevant findings and conclusions provide:

12. Mr. Baratz filed a Motion to Reconsider the guilty finding as to amended count V (murder) on November 16, 2004, in which he mentioned that the court's finding of guilt followed a discussion of the evidence between the court and the parties and that the issue raised by the court was whether use of the defendant's shoe could qualify as a deadly weapon.

13. On November 24, 2010, the court held a hearing on the Motion to Reconsider. The court noted that whether a shoe could be considered a deadly weapon to support voluntary manslaughter as a Class A felony "was an issue that bothered" the court just prior to rendering the verdict. The court also noted that, at the time of trial, Mr. Baratz was not a proponent that a shoe could be a deadly weapon. Mr. Baratz stated in part that, "I think that [ ] the Court was seeking guidance and I went back and researched it and I think the cited case (*Miller*) probably more properly ex-

42–1–3(a)(1) (formatting altered). "The existence of sudden heat is a mitigating factor that reduces what otherwise would be murder under section 1(1) of this chapter to voluntary manslaughter." *Id.* § 35–42–1–3(b).

plains the proper definition...." When asked by the court if he would concede that the shoe was a deadly weapon, Mr. Baratz replied, "I believe that the Court could very well find that fits the definition." After argument from the State, the court asked Mr. Baratz, "If I rule consistent with your motion, is it your belief that you have waived the issue of whether or not the shoe is a deadly weapon on appeal?" Mr. Baratz replied, "I'm not sure ..." and went on to remind the court that it was "on the verge of finding the shoe to be a deadly weapon because you were speaking about voluntary as an A or a B ..." and that "had the Court had the *Miller* case at its disposal, the Court would have made its decision finding him guilty of the voluntary as an A, irrespective of what I would have said...." The court stated, "... I'm worried that I might have made a mistake and I'm trying to reflect on my decision and determine, right now, using this motion as a vehicle, to do what I think is the right thing." The State argued that the court itself said that words alone are not sufficient provocation. The court noted testimony that the victim had also lunged at Conder. And Mr. Baratz added that the victim had also pushed Conder. The court concluded:

> When I was ... making my analysis and mentioned that words alone aren't enough to provoke sudden heat, I forgot the shove. The shove, the words, the shoe being a deadly weapon, I'm more confident this was a voluntary manslaughter as a class A felony than a murder.... The finding on the theft remains the same.

15. At sentencing, regarding the court's decision to reduce the verdict to voluntary manslaughter as a Class A felony, the court stated, "The decision that I made I think is a correct one based on the law and based on the facts as I heard them at trial."

\* \* \* \* \* \*

2.

\* \* \* \* \* \*

a. The Petition first alleges that trial counsel's performance was "deficient in his submission of a Motion to Reconsider to the trial court, in which counsel argued that Conder's shoe was a deadly weapon, thereby prejudicing his client by escalating the Voluntary Manslaughter charge from a Class [B] felony to a Class [A] felony." In his Petition, Conder concedes that "counsel's filing the Motion to Reconsider was appropriate" but takes issue with counsel's argument that a shoe could be a deadly weapon—because "if there is no weapon, the charge is a Class B felony."

Counsel's Motion to Reconsider did not escalate the charge as the Petition alleges; it instead resulted in the court reducing Conder's conviction for murder to a Class A felony. At the conclusion of his trial, Conder was facing 45 to 65 years for murder and up to 3 years for the theft, lesser to the A–Felony Robbery. (As an aside, this Court notes that due in part to Mr. Baratz's diligent representation, Conder was found not guilty of both types of murder. He was also found not guilty of the A felony robbery and was instead found guilty of lesser-included D felony theft). At the conclusion of the Motion to Reconsider, [Conder] was facing 20 to 50 years for Voluntary Manslaughter as an A Felony and up to 3 years for theft. To prevail on an ineffective assistance of counsel claim based upon counsel's failure to file motions, pursue defenses, or object on a defendant's behalf, it must be demonstrated that such motions or objections would have been successful. [Conder]

argues that the Motion to Reconsider should have solely requested a B-felony voluntary manslaughter. The record shows that Mr. Baratz argued in his closing argument for voluntary manslaughter as a Class B felony,[2] and when asked by the court if voluntary manslaughter would be an A or B felony, Mr. Baratz replied, "I think it would be a [Class] B [felony], as [Class] A [felony] [requires] a weapon. . . ." The following colloquy occurred immediately following closing arguments of Conder's trial:

> THE COURT: I'm going to ask the attorneys to give me another couple of minutes each on their understanding of the difference between voluntary manslaughter and murder and if it were voluntary manslaughter, if it would be A or B felony, voluntary manslaughter. Mr. Baratz, you raised that issue first. . . .
>
> MR. BARATZ: I think it would be a B [felony], as A [felony] [requires] a weapon. . . .
>
> THE COURT: The question is whether a sneaker-shod foot can be a deadly weapon. I would like to hear that from you.
>
> MR. BARATZ: I don't know.
>
> THE COURT: I have the definition that we use in our instructions which says, essentially, that an item used and the way it's capable of being used that it can cause death is a deadly weapon. . . . Can a sneaker-shod foot satisfy that definition?

> MR. BARATZ: Are you also asking whether or not a foot, I mean a fist. . . .
>
> THE COURT: Not on the facts of this case I'm not.
>
> MR. BARATZ: Okay.

The court apparently rejected trial counsel's reply that this would be a B-felony, and from that point on and from the court's colloquy with the parties and its ruling at the conclusion of the bench trial, it is clear that the only conflict was whether the conviction should be an A-felony voluntary manslaughter or knowing/intentional murder.

While the written Motion to Reconsider may [be] read as though he was asking for the A-felony, that was not the argument. Mr. Baratz had argued for the B-felony, but when it became apparent that the options were between the A-felony and the murder, Mr. Baratz provided legal authority to the court that would allow the court to convict on the lesser offense of voluntary manslaughter as a Class A felony. Mr. Baratz did not concede that his client's shoe was a deadly weapon, even when pressed by the court to do so—but trial counsel did reply, in response to the court's inquiry, that "the Court could very well find that it fits the definition" because the apparent options at that point were either a Class A felony or murder. It is clear from the record that the trial court would not have granted a Motion to Reconsider had it requested voluntary manslaughter only as a Class B felony. Trial counsel's Motion to Re-

---

**2.** At this precise point, the trial court included footnote 3, which provides:

See T.R. 401 (". . . we know there were no weapons involved.")[;] See also T.R. 405 (". . . without a weapon and . . . with the facts of the injuries as related by Dean Hawley, I'm not sure that is enough to constitute an intentional killing, and more

likely it looks to be a voluntary manslaughter. Certainly there is sudden heat here. . . ."); T.R. 408 ("We would ask that the Court find him guilty of voluntary manslaughter which I think is supported by the sudden heat. . . .").
Appellant's App. p. 55.

consider reduced the sentence that his client faced on the most serious charge from a range of 45 to 65 years to a range of 20 to 50 years. [Conder] has failed to prove deficient performance or prejudice here. This claim fails.

Appellant's App. p. 51–52, 54–56 (citations and footnote omitted).

Conder now appeals.

### Discussion and Decision

■■■ The petitioner in a post-conviction proceeding bears the burden of establishing grounds for relief by a preponderance of the evidence. Ind. Post–Conviction Rule 1(5); *Fisher v. State*, 810 N.E.2d 674, 679 (Ind.2004). When appealing from the denial of post-conviction relief, the petitioner stands in the position of one appealing from a negative judgment. *Id.; see also Mauricio v. State*, 941 N.E.2d 497, 498 (Ind.2011). On review, we will not reverse the judgment unless the evidence as a whole unerringly and unmistakably leads to a conclusion opposite that reached by the post-conviction court. *Mauricio*, 941 N.E.2d at 498; *Fisher*, 810 N.E.2d at 679. The post-conviction court in this case entered findings of fact and conclusions thereon in accordance with Indiana Post–Conviction Rule 1(6). A post-conviction court's findings and judgment will be reversed only upon a showing of clear error—that which leaves us with a definite and firm conviction that a mistake has been made. *Fisher*, 810 N.E.2d at 679. The postconviction court is the sole judge of the weight of the evidence and the credibility of witnesses. *Id.* We accept findings of fact unless clearly erroneous, though we accord no deference to conclusions of law. *Id.*

Conder argues that his trial counsel, Attorney Baratz, was ineffective. To prevail on a claim of ineffective assistance of counsel, a petitioner must demonstrate both that his counsel's performance was deficient and that the petitioner was prejudiced by the deficient performance. *Ben–Yisrayl v. State*, 729 N.E.2d 102, 106 (Ind. 2000) (citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)), *reh'g denied.* Failure to satisfy either prong will cause the claim to fail. *French v. State*, 778 N.E.2d 816, 824 (Ind.2002). Counsel's performance is deficient if it falls below an objective standard of reasonableness based on prevailing professional norms. *Id.* Counsel is afforded considerable discretion in choosing strategy and tactics, and we will accord those decisions deference. *Timberlake v. State*, 753 N.E.2d 591, 603 (Ind.2001), *reh'g denied.* A strong presumption arises that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Id.* To meet the appropriate test for prejudice, the petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Perez v. State*, 748 N.E.2d 853, 854 (Ind.2001).

Conder argues that Attorney Baratz was deficient for filing the motion to reconsider in which he asked the court to reduce the murder conviction to voluntary manslaughter as a Class A felony because he was neither consulted about the motion nor agreed that a shoe was a deadly weapon. Conder also argues that he was prejudiced because Attorney Baratz's "action caused him to be unable to appeal not only the issue of whether a foot or shoe can be a deadly weapon, but also whether a sufficient *mens rea* of intentionally or knowingly killing Truett had been proved, as both Murder and Voluntary Manslaughter require." Appellant's Br. p. 14.

██ As for whether Attorney Baratz's performance was deficient, we note that "[f]ew points of law are as clearly established as the principle that tactical or strategic decisions will not support a claim of ineffective assistance." *McCary v. State*, 761 N.E.2d 389, 392 (Ind.2002) (quotation omitted), *reh'g denied.* Even the best and brightest criminal defense attorneys may disagree on ideal strategy or the most effective approach on any given case. *Id.* In addition, isolated mistakes, poor strategy, inexperience, and instances of bad judgment do not necessarily render representation ineffective. *Id.*

During closing arguments, Attorney Baratz argued that it was not an intentional killing; rather, it was a voluntary manslaughter with sudden heat and no weapon. When asked by the trial court if he thought it was voluntary manslaughter as a Class A or B felony, Attorney Baratz thought Class B felony, because Class A felony required a weapon. *See* Tr. p. 418–20. When specifically asked if he thought a shoe was a deadly weapon, Attorney Baratz would not commit. *Id.* at 420–21. The trial court found Conder guilty of murder, finding "words can't inspire sudden heat" and "while there's a significant question about whether the killing was intentional, there's no doubt that delivery of the deadly blows was knowingly, knowingly committed." *Id.* at 422–23.

After consulting Conder, Attorney Baratz filed a motion to reconsider. At the hearing on this motion, the trial court recalled:

> I was struggling pre-verdict with voluntary versus murder. I think I asked the question whether or not a shoe, under the circumstances of this case, could be considered a deadly weapon, such that the voluntary would be an A felony.

*Id.* at 428. The trial court "cut to the chase" and asked Attorney Baratz "if the shoe was used to cause the crushing injuries described by Doctor Hawley" would it be a deadly weapon? *Id.* at 430. Attorney Baratz responded, "I believe that the Court could very well find that fits the definition." *Id.* The State agreed but was worried about being set up by the defense. *Id.* The trial court then asked Attorney Baratz, "If I rule consistent with your motion, is it your belief that you have waived the issue of whether or not the shoe is a deadly weapon on appeal?" *Id.* at 431. Attorney Baratz was "not sure" but thought it was "obvious" that the trial court was "on the verge of finding the shoe to be a deadly weapon because you were speaking about voluntary as an A or a B." *Id.* And Attorney Baratz was certain that the court would have found Conder guilty of voluntary manslaughter as a Class A manslaughter if it had the *"Miller"* [3] case at its disposal back then. *Id.* The trial court ruled in favor of Conder:

> [W]hether the sole of the shoe was used to stomp the victim in the head or the toe of the shoe was used to kick him in the throat, the shoe as used constitutes a deadly weapon. When I was coming, making my analysis and mentioned that words alone aren't enough to provoke the sudden heat, I forgot the shove. The shove, the words, the shoe being a deadly weapon, I'm more confident this was a voluntary manslaughter as a class A felony than a murder. I'm going to grant the motion, enter the conviction as voluntary manslaughter, a class A felony.

*Id.* at 439.

We find that Attorney Baratz was not deficient in filing the motion to reconsider

---

**3.** No citation is given for this case on appeal, and neither party cites a *Miller* case in their appellate briefs.

in which he asked the trial court to reduce Conder's murder conviction to voluntary manslaughter as a Class A felony. Although Conder claims he was not consulted, he wrote in his post-conviction petition "that counsel's filing the motion to reconsider was appropriate." Appellant's App. p. 35. Therefore, this part of the issue is waived. Moreover, Attorney Baratz testified at the post-conviction hearing that he consulted Conder before filing the motion to consider, even though he might not have discussed the potential for waiving certain appellate rights. Nov. 18, 2009, P–C Tr. p. 14–16. The postconviction court was not obligated to believe Conder's self-serving testimony that he was not consulted about the motion. *See* Appellant's App. p. 56 n.4 (post-conviction court finding that this issue was not properly before the court because it was not raised in the petition for post-conviction relief).[4]

In any event, if Attorney Baratz did *not* file the motion to reconsider, then Conder's murder conviction would have stood, and Conder's only option would have been to file a direct appeal of that conviction. On direct appeal from a straight murder conviction, it would not have mattered whether shoes are a deadly weapon because a deadly weapon is not required to obtain a murder conviction. And although this meant Conder could have appealed the mens rea element of murder (despite the trial court's statement that there was "no doubt" that Conder knowingly killed Truett), we find that Attorney Baratz made the reasonable tactical decision to file the motion to reconsider and ask the trial court to reduce the murder conviction to Class A felony voluntary manslaughter.

This reduced the classification of Conder's offense from murder to a Class A felony and his sentencing exposure from 45–65 years to 20–50 years. *Compare* Ind.Code § 35–50–2–3 *with* Ind.Code § 35–50–2–4. Given the discussion that occurred at the end of Conder's bench trial in which the trial court engaged the attorneys in a debate about whether the killing was murder or voluntary manslaughter as a Class A or B felony and the more specific discussion of whether shoes can be a deadly weapon and given the trial court's ultimate verdict of murder, Attorney Baratz was more than justified in pursuing Class A voluntary manslaughter after the trial court had already rejected his argument for Class B felony voluntary manslaughter. The bottom line is that Attorney Baratz had two choices: maintaining the murder conviction and appealing on sufficiency grounds or agreeing that a shoe could be a deadly weapon and getting his client a Class A felony voluntary manslaughter conviction. Attorney Baratz chose wisely.

Furthermore, Conder cannot show prejudice. Conder had little chance of success in arguing that the evidence was insufficient to support the "knowingly" element of murder. *See Fisher v. State,* 810 N.E.2d 674, 677 (Ind.2004) ("[Sufficiency arguments have] little chance of success" and "Courts of review rarely reverse a [trier of fact's] guilty verdict on sufficiency of evidence grounds"). The evidence shows that Conder kicked Truett in the head, face, and neck multiple times. Truett had at least six separate blunt force injuries to his head, which included a crushed eye socket, crushed larynx, frac-

---

4. Conder cites *Banks v. State,* 884 N.E.2d 362 (Ind.Ct.App.2008), *trans. denied,* in support of his argument that Attorney Baratz was deficient. However, *Banks* is readily distinguishable because trial counsel in that case conceded that his client committed an offense during trial without his consent, before any verdict had been rendered. Here, Attorney Baratz only conceded that a shoe was a deadly weapon after his client had been convicted of murder, the most serious offense.

tured bones to the face, and bleeding brain. The forensic pathologist said that Truett's injuries were consistent with being hit with a fist or kicked. In addition, after the crime, Conder attempted to hide his guilt by using bleach to clean the blood off his shoes and throwing the wallet he stole from Truett into a sewer. And to the extent that Conder was intoxicated, he was voluntarily intoxicated; therefore, his intoxication could not be taken into account when determining the mental state required for the conviction. *See Baer v. State,* 942 N.E.2d 80, 97 (Ind.2011), *reh'g denied; Orta v. State,* 940 N.E.2d 370, 375–76 (Ind.Ct.App.2011). Conder cannot show a reasonable probability of success on a sufficiency challenge to the knowingly element of murder.[5]

 In addition, Conder cannot show a reasonable probability that he would have prevailed on the shoes-as-a-deadly-weapon issue even had he not conceded it at the motion to reconsider hearing. As we have noted,

> The term "deadly weapon" seems odd when discussing a homicide. If death in fact results, then it would necessarily seem that whatever was used to kill the victim was indeed a "deadly weapon," even if that weapon was the defendant's bare hands. This is unlike cases where courts have struggled to decide whether a certain item was a "deadly weapon" where death did not occur.

*Ross v. State,* 877 N.E.2d 829, 836 n. 5 (Ind.Ct.App.2007), *trans. denied.* Indiana's definition of a deadly weapon supports this reasoning. A deadly weapon is defined in relevant part as any *"material that in the manner it is used,* or could

ordinarily be used, or is intended to be used, is readily capable of causing serious bodily injury." Ind.Code § 35–41–1–8(a) (emphasis added). Whether an object is a deadly weapon is determined by considering a description of the object, the manner of its use, and the circumstances of the case. *Davis v. State,* 835 N.E.2d 1102, 1112 (Ind.Ct.App.2005), *trans. denied.*

Although no Indiana case appears to have addressed the issue of whether shoes are a deadly weapon, other jurisdictions have done so, concluding that kicking with a "shod foot" constitutes an assault with a "deadly weapon." *See* Christopher Vaeth, Annotation, *Kicking as Aggravated Assault, or Assault with Dangerous or Deadly Weapon,* 19 A.L.R.5th 823 § 4 (1994); *see also Dasher v. State,* 285 Ga. 308, 676 S.E.2d 181, 184 (2009) ("Hands and fists may be deadly weapons depending upon the circumstances, including the extent of the victim's injuries. Although fists and feet are not considered deadly weapons . . ., they may be found to be a deadly weapon by the jury depending on the manner and means of their use, the wounds inflicted, etc. . . . . The jury was authorized to conclude that appellants' hands and feet were used as deadly weapons and we cannot hold, as a matter of law, that the hands and feet used to inflict injuries upon the victim were not deadly weapons." (quotations omitted)); *Jones v. Commonwealth,* 256 S.W.2d 520, 522 (Ky.Ct.App.1953) ("It is clear that the issue submitted was whether the shoes on the accused's feet, used by him in stomping and kicking the prosecuting witness, constituted a deadly weapon within the meaning of the statute. Therefore, we conclude that 'shoes' may be

---

5. We point out that Conder claims that Attorney Baratz should have pursued a conviction for Class B felony voluntary manslaughter because a deadly weapon was not involved. However, that crime requires the same mens rea as murder and Class A felony voluntary manslaughter. Therefore, his argument that counsel was ineffective for foreclosing his ability to challenge the mens rea is not a well-reasoned one.

regarded as within the term 'deadly weapon' when employed in such a manner as may be reasonably calculated to produce great bodily injury or death."); *State v. Madden,* 99 S.W.3d 127, 137 (Tenn.Crim. App.2002) ("It appears most jurisdictions hold an assault with a shod foot may constitute an assault with a deadly weapon depending upon the manner and use of the shoe under the circumstances.... We believe Tennessee follows this majority view." (quotation omitted)), *appeal denied;* *Warren v. State,* 835 P.2d 304, 308 (Wyo. 1992) (stating "even though shoes might not generally be considered a deadly weapon, the jury could find they could be so characterized under the circumstances of this case" and recognizing "that courts in other jurisdictions have found shoes to be deadly weapons in various circumstances"); *see also United States v. Steele,* 550 F.3d 693, 699 (8th Cir.2008) (concluding that tennis shoes are a "dangerous weapon" for purposes of 18 U.S.C. § 113(a)(3)); *Commonwealth v. Tevlin,* 433 Mass. 305, 741 N.E.2d 827, 833 (2001) (holding that "[f]ootwear, such as a shoe, when used to kick, can be a dangerous weapon").

These jurisdictions, like Indiana, look to the manner in which the object was used and the type of injury it is capable of inflicting when determining whether it is a deadly weapon. And although shoes are not typically deadly weapons, depending on their manner of use and the circumstances, as this case illustrates, they can be. Given that Conder's feet and shoes were used to kick Truett in the head multiple times killing him, they were the instrumentality of Truett's death and were, by definition, a deadly weapon. Accordingly, by considering the manner that the feet and shoes were used and the circumstances of the case before making a deadly weapon determination, Indiana now falls in line with multiple states on this point.

Conder was not prejudiced by Attorney Baratz's concession.

Because Conder has failed to establish deficient performance and prejudice, we affirm the post-conviction court.

Affirmed.

KIRSCH, J., and MATHIAS, J., concur.