**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**

APPELLANT PRO SE:

**SHANE HARROLD**
Michigan City, Indiana

ATTORNEY FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**MICHAEL GENE WORDEN**
Deputy Attorney General
Indianapolis, Indiana

FILED

Oct 25 2012, 9:10 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| SHANE HARROLD, | ) | |
| | ) | |
| Appellant-Petitioner, | ) | |
| | ) | |
| vs. | ) | No. 35A02-1206-PC-518 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Respondent. | ) | |

APPEAL FROM THE HUNTINGTON CIRCUIT COURT
The Honorable Thomas Hakes, Judge
Cause No. 35C01-0310-PC-3

**October 25, 2012**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**BARNES, Judge**

**Case Summary**

Shane Harrold appeals the denial of his petition for post-conviction relief ("PCR petition"), which challenged his conviction for murder. We affirm.

**Issues**

The issues before us are:

I. whether Harrold received ineffective assistance of trial counsel; and

II. whether his guilty plea was involuntary.

**Facts**

On January 26, 2001, at about 11:30 a.m., Harrold became angry at his two-year-old stepson, Justin, after he urinated in his pants. Harrold picked up Justin and slammed him over his knee, rendering the boy unconscious. Harrold delayed seeking medical treatment for Justin, even though he was aware that something was very wrong. Instead, Harrold ran cold water over Justin's face, shook him, banged his head on the floor, and attempted to perform CPR. At about 1:30 p.m., Harrold finally drove Justin to the hospital, after first driving to his manager's house to inform her that he would not be coming to work. Justin was declared dead at the hospital.

On January 29, 2001, the State charged Harrold with murder. On March 19, 2001, Harrold pled guilty but mentally ill to murder, in exchange for which the State agreed not to pursue the death penalty or life without parole. The State also agreed that it was going to "remain[] silent at the sentencing hearing." App. p. 34. Trial counsel stated that

2

despite Harrold's mental health problems, it was counsel's opinion that Harrold understood his guilty plea and that his mental illness did "not diminish his intelligence or his ability to make those decisions." Id. at 36.

The trial court conducted an initial sentencing hearing on April 23, 2001. At the beginning of this hearing, counsel for Harrold indicated that he and Harrold had reviewed the presentence report and that Harrold wanted to advise the trial court that he had never used an alleged alibi referred to in the report. The report also listed eleven incidents of mental health hospitalizations Harrold had undergone between the ages of twelve and seventeen. There are several references in the report to Harrold having been diagnosed with major depression, as well as possible oppositional defiant disorder. Also, the report referred at one point to Harrold having an IQ of 75 and frequently using marijuana. Harrold told the probation officer preparing the report that he was currently taking Prozac for depression and "trozadone"[1] as a sleep aid. Id. at 26. There is no mention in the report of Harrold ever having been diagnosed with paranoid schizophrenia. During this hearing, the prosecutor cross-examined Harrold and his wife when they testified regarding sentencing. At the conclusion of this hearing, the trial court stated that it was going to continue the hearing for one week so that it could "confer with my probation officer more deeply about the hospitalizations. I was unaware that there were so many and I would like to know what they were . . . ." Id. at 76.

---

[1] This would appear to actually be trazodone.

3

The sentencing hearing resumed on April 30, 2001. During this hearing, the prosecutor stated, "I have agreed not to make any specific sentencing recommendation." Id. at 83. However, she then proceeded to make an argument regarding her view of the possible aggravators and mitigators in the case. The trial court then pronounced sentence, stating in part:

> The Court has considered at great length the mental illness problems . . . . but a close reading of all of the reports of the doctors show one major, constant factor, and that's oppositional defiant disorder. The mere fact that someone has a 75 I.Q. and has not been educated to the extent he could have been is to [sic] a reason for murdering a child.

Id. at 84. Ultimately, the court concluded that Harrold's mental health was a mitigating circumstance but that it was outweighed by the aggravating circumstances of his criminal history, the nature and circumstances of the crime, and the age of the victim; the court imposed a sentence of sixty-five years.

Harrold filed a belated direct appeal, challenging the propriety of his sentence and alleged violation of the plea agreement by the prosecutor in not remaining completely silent during the sentencing hearings. This court affirmed Harrold's sentence. Harrold v. State, No. 35A02-0509-CR-842 (Ind. Ct. App. Aug. 10, 2006), trans. denied. With respect to Harrold's claim that the prosecutor violated the plea agreement, we first noted that he had waived that claim by failing to object to the prosecutor's questioning and comments. Regardless, we also held that Harrold's argument on this issue was "an attack

4

on the plea agreement's validity, and, thus, it must be brought, if at all, by a petition for post-conviction relief." Id., slip op. at 12.

On October 25, 2011, Harrold filed an amended PCR petition, along with a request that the petition be decided by affidavit for the stated reason that he was "illiterate, uneducated, and incompetent, and . . . is not competent to present his post-conviction issues at an evidentiary hearing."[2] App. p. 89. Accompanying the petition were affidavits from Harrold and his mother, asserting among other things that he had been diagnosed with paranoid schizophrenia as a child and that trial counsel had been ineffective for failing to adequately investigate his mental health problems. The PCR court agreed to decide the petition via affidavit. The State presented no evidence, and Harrold presented no evidence aside from the original affidavits submitted with his amended PCR petition. On May 24, 2012, Harrold filed a motion for an extension of time to gather and submit additional evidence, which the PCR court denied. On June 7, 2012, the PCR court denied Harrold's petition. Harrold now appeals.

**Analysis**

PCR proceedings are civil in nature, and a defendant bears the burden of establishing his or her claims by a preponderance of the evidence. Smith v. State, 822 N.E.2d 193, 198 (Ind. Ct. App. 2005), trans. denied. A defendant appealing the denial of a PCR petition is challenging a negative judgment. Id. Thus, to the extent this appeal

---

[2] Curiously, despite this claim, Harrold represented himself pro se below and on appeal, and he has filed a brief with this court that clearly could not have been written by an "illiterate," "uneducated," or "incompetent" person.

turns on factual issues, Harrold must convince this court that the evidence as a whole leads unerringly and unmistakably to a decision opposite that reached by the PCR court. See id. "In other words, the defendant must convince this court that there is no way within the law that the court below could have reached the decision it did." Id. We will not defer to the PCR court's legal conclusions, but we do accept its factual findings unless they are "clearly erroneous." Id.

Additionally, Harrold's PCR petition was resolved solely on the basis of affidavits and without a live evidentiary hearing. It was within the trial court's discretion to order that the case be submitted on affidavits only, given that Harrold was acting pro se. See id. at 201 (citing Ind. Post-Conviction Rule 1(9)(b)). Moreover, Harrold explicitly requested that the case be submitted on affidavits only. Resolution of the case in this manner did not render the PCR court's decision a summary disposition under Post-Conviction Rule 1(4)(f) or (g). See id. Rather, we review any factual issues in this case as we would have if there had been a live evidentiary hearing; that is, for whether the PCR court's findings or judgment are clearly erroneous. See id. at 205-06 (reviewing whether defendant's trial counsel was ineffective under "clearly erroneous" standard where case was submitted on affidavit under Post-Conviction Rule 1(9)(b)).

### I. Ineffective Assistance of Counsel

To prevail on a claim of ineffective assistance of counsel, a petitioner must demonstrate both that his or her counsel's performance was deficient and that the petitioner was prejudiced by the deficient performance. Ben–Yisrayl v. State, 729

6

N.E.2d 102, 106 (Ind. 2000) (citing Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984)), cert. denied. An attorney's performance is deficient if it falls below an objective standard of reasonableness based on prevailing professional norms. French v. State, 778 N.E.2d 816, 824 (Ind. 2002). To meet the appropriate test for prejudice, the petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Id. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694, 104 S. Ct. at 2068. Failure to satisfy either prong will cause the claim to fail. Grinstead v. State, 845 N.E.2d 1027, 1031 (Ind. 2006).

The gist of Harrold's argument is that the presentence report was inaccurate and/or incomplete regarding the full extent of his mental illness, in particular his claim that he had been diagnosed with paranoid schizophrenia as a child. Harrold claims that trial counsel should have uncovered the true, full extent of Harrold's mental illness history, which he asserts is much more severe than described in the presentence report. Harrold claims trial counsel should have sought his examination by court-appointed mental health professionals for purposes of determining his competency to stand trial, and/or to pursue an insanity defense. When considering a claim of ineffective assistance for alleged failure to investigate as possible defense or mitigating sentencing evidence, "we apply a great deal of deference to counsel's judgments." Boesch v. State, 778 N.E.2d 1276, 1283 (Ind. 2002). Even if an attorney has engaged in "'less than complete investigation'" into a case, strategic choices made by that attorney still are reasonable "'precisely to the

7

extent that reasonable professional judgments support the limitation on investigation.'" Id. (quoting Strickland, 466 U.S. at 690-91, 104 S. Ct. at 2066). "'In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary.'" Id.

Harrold relies, in part, upon Brown v. Sternes, 304 F.3d 677 (7th Cir. 2002). In that case, the Seventh Circuit reversed the denial of habeas corpus relief to a state prisoner, on the basis that he had received ineffective assistance of counsel because of counsel's failure to adequately investigate the defendant's mental health. The court specifically noted, "'Where the record establishes that counsel had reason to know, from an objective standpoint, that a possible defense, such as insanity, was available, failure to investigate fully can constitute ineffective assistance of counsel.'" Brown, 304 F.3d at 692 (quoting Jones v. Page, 76 F.3d 831, 841 (7th Cir. 1996), cert. denied) (emphasis added in Brown). Additionally, trial counsel is ineffective if he or she has received information from a reliable source that the client has had a history of psychiatric problems, but failed to adequately investigate that history. Id. at 694. Similarly, in Prowell v. State, 741 N.E.2d 704, 714-15 (Ind. 2001), our supreme court on post-conviction review vacated a defendant's guilty plea to murder because trial counsel had been ineffective for failing to adequately and timely investigate the defendant's mental health.

There is a significant difference between cases such as Brown and Prowell and the present case. Specifically, the post-conviction records in Brown and Prowell were replete

8

with concrete evidence of the defendants' severe mental illnesses, as well as evidence of the extent of knowledge that the trial attorneys had of those illnesses and their failure to act upon that knowledge. Here, by marked contrast, Harrold has failed to compile a record establishing that his trial attorney was ineffective for not conducting additional research into his mental health or in not seeking appointment of mental health professionals to examine him.

First and foremost, no affidavit or testimony from Harrold's trial attorney on this or any other matter was submitted into evidence. When trial counsel is not called upon to testify regarding a defendant's allegations of ineffective assistance of counsel, the post-conviction court may infer that counsel would not have corroborated the petitioner's allegations. Oberst v. State, 935 N.E.2d 1250, 1254 (Ind. Ct. App. 2010), trans. denied. Indeed, although Harrold did not submit an affidavit from his trial attorney in support of his claims of ineffective assistance, it is unclear that Harrold was unable to obtain an affidavit or affidavits from his attorney. Harrold states in his brief, "counsel offered self-serving affidavits once his performance was challenged." Appellant's Br. p. 17. This seems to suggest that Harrold did obtain affidavits from his trial attorney, but they were unsupportive of his claims of ineffective assistance.

Thus, we have absolutely no way of confirming the extent of investigation that trial counsel made into Harrold's mental health. Clearly, there was an awareness of Harrold's repeated hospitalizations as a teenager as listed in the presentence report and counsel secured a plea of guilty but mentally ill to the charge of murder. But we do not

9

know whether counsel investigated Harrold's mental health and made a reasonable professional judgment that pursuit of an insanity defense or a competency exam was not warranted, or whether essentially no investigation was made beyond what was reflected in the presentence report. Keeping in mind that it was Harrold's burden to prove that he was entitled to post-conviction relief and that he submitted no evidence on this point, we must presume that the former is what occurred. Such a conclusion would be consistent with what trial counsel stated at the time of Harrold's guilty plea, namely, that he did not believe Harrold lacked adequate competence and intelligence to enter into that plea. We have no evidence regarding trial counsel's personal interactions with Harrold. It is evident, however, that such interactions with Harrold did not lead trial counsel to believe that Harrold had a more serious mental illness than was reflected in the presentence report.

We also observe that to the extent Harrold now contends that the presentence report understated the severity of his mental health problems, and most notably by failing to relate that he has been diagnosed with paranoid schizophrenia, Harrold apparently did not notify trial counsel of that error. Moreover, the presentence report states that Harrold told the probation officer he was taking Prozac for depression and trazodone as a sleeping aid; there was no mention of paranoid schizophrenia. Harrold, through trial counsel, was given two opportunities to make any corrections to the presentence report, at the beginning of both the April 23 and April 30, 2001 sentencing hearings. Both times, counsel noted only a correction related to Harrold's alleged alibi use. Harrold makes no

10

argument that trial counsel failed to thoroughly review the presentence report with him prior to sentencing.

In any event, on the subject of Harrold's alleged diagnosis of paranoid schizophrenia, there is no documentary evidence in the record of such a diagnosis, aside from the self-serving affidavits of Harrold and his mother.[3] Post-conviction courts are not required to accept self-serving affidavits or testimony of a defendant at face value. See Conder v. State, 953 N.E.2d 1197, 1205 (Ind. Ct. App. 2011). Thus, it is not even conclusively established that Harrold has ever been diagnosed with paranoid schizophrenia. Even if he has been, there is no evidence in the record regarding how Harrold's particular mental illness would or should have affected trial counsel's assessment of the case.[4] We simply do not know what is in Harrold's mental health records, aside from what is listed in the presentence report. Without such knowledge, we cannot gauge trial counsel's performance related to Harrold's mental health. We must presume that that performance did not fall below an objective standard of reasonableness.

Finally, we note that the trial court continued Harrold's sentencing hearing for one week so that it and the probation officer who prepared the presentence report could further investigate his mental health history. We assume that an investigation in fact took

---

[3] Harrold does not appeal the trial court's denial of his motion for an extension of time to attempt to obtain his medical records. Additionally, Harrold submitted two affidavits of his own in support of his PCR petition, but one of them was unsigned. Unsigned affidavits do not constitute admissible evidence. Brewster v. State, 697 N.E.2d 95, 96 (Ind. Ct. App. 1998). We will consider only Harrold's signed affidavit and that of his mother.

[4] Harrold cites material outside the record regarding paranoid schizophrenia generally; aside from being outside the record, there is no evidence of the particulars of Harrold's mental illness.

11

place and that it also failed to uncover any evidence that Harrold had ever been diagnosed with paranoid schizophrenia, given that the trial court failed to mention any such diagnosis. Again, without the benefit of trial counsel's testimony we cannot say for certain, but it is reasonable to speculate that further investigation into Harrold's mental health by trial counsel would have had the same end result as the trial judge's investigation; i.e., it would not have uncovered that Harrold had previously been diagnosed with paranoid schizophrenia. In sum, we conclude that Harrold has failed to prove by a preponderance of the evidence that he received ineffective assistance of trial counsel.

## II.  *Voluntariness of Guilty Plea*

Next, we address Harrold's claim that his guilty plea was rendered involuntary by the prosecutor's failure to remain completely silent during the sentencing hearings. As a general rule, prosecutors must honor promises given in exchange for a defendant's guilty plea or the plea may be deemed involuntary. Harris v. State, 671 N.E.2d 864, 870 (Ind. Ct. App. 1996) (citing Santobello v. New York, 404 U.S. 257, 262, 92 S. Ct. 495, 499 (1971)), trans. denied. Specifically, "when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." Santobello, 404 U.S. at 262, 92 S. Ct. at 499. "Accordingly, 'only breaches of material promises will allow a court to conclude that a plea was involuntarily induced and thus constitutionally infirm.'" Harris v. State, 762 N.E.2d 163, 168 (Ind. Ct. App. 2002) (quoting Rodriguez v. New Mexico, 12 F.3d

12

175, 175 (10th Cir. 1993)), trans. denied.  By contrast, an immaterial breach of a plea agreement by the State does not render a guilty plea involuntary.  See id.

Assuming that the State did indeed agree to "remain silent" at sentencing as part of the plea agreement,[5] we cannot conclude the prosecutor materially breached that promise or that such breach rendered Harrold's guilty plea involuntary.  To begin with, Harrold does not state in his affidavit, and thus there is no evidence, that the State's promise to "remain silent" at the sentencing hearing was a material factor inducing him to plead guilty.  This promise also must be contrasted with the State's promise not to seek the death penalty or life without parole against Harrold, which clearly was the much more significant promise in the context of this case.  Finally, although the prosecutor did not remain completely silent during the sentencing hearings, neither did she provide a sentencing recommendation or request to the trial court.   That, we believe, would have been the crucial purpose of any promise by the State to "remain silent" with respect to Harrold's sentencing.  We therefore conclude that Harrold has failed to establish, as was his burden, that his guilty plea was rendered involuntary by the prosecutor not remaining completely silent during his sentencing hearings.

---

[5] A copy of the written plea agreement is not in the PCR record before us.  However, the trial court did refer to the State promising to "remain silent" at the outset of the sentencing hearing, and we likewise noted this promise in our opinion on direct appeal.

## Conclusion

Harrold has failed to establish his claims that he received ineffective assistance of trial counsel or that his guilty plea was involuntary. We affirm the denial of his PCR petition.

Affirmed.

VAIDIK, J., and MATHIAS, J., concur.