## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Sep 29 2015, 8:40 am

*Kevin S. Smith*

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANT

Stephen T. Owens
Public Defender of Indiana

James T. Acklin
Chief Deputy Public Defender
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Cynthia L. Ploughe
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Jerell Owens,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

September 29, 2015

Court of Appeals Case No.
48A02-1501-PC-60

Appeal from the Madison Circuit Court

The Honorable Thomas Newman, Jr., Judge

Trial Court Cause No.
48D03-0909-PC-295

**Vaidik, Chief Judge.**

# Case Summary

[1] Jerell Owens was charged with murder and robbery for killing a man after losing money to him in a dice game. Owens's defense theory at trial was that Perry Thompson was the shooter. Owens was convicted; he later sought post-conviction relief alleging that his trial counsel was ineffective for referencing Thompson's lack of criminal history, which undermined Owens's defense that Thompson was the shooter. Because trial counsel's strategy was to prove that police coerced Thompson into implicating Owens as the shooter, and the fact that Thompson did not have a criminal history supported this theory, we conclude that trial counsel's performance was not deficient. We therefore affirm the post-conviction court.

# Facts and Procedural History

[2] Owens was convicted of murder and robbery for the 2007 shooting of Damian Hopkins following a dice game in Anderson, Indiana. The underlying facts, as taken from this Court's opinion on direct appeal, are as follows:

> On February 4, 2007, Owens, Damian Hopkins (Hopkins), Richard Wilson (Wilson), and Perry Thompson (Thompson) were gambling, smoking marijuana, and drinking beer in Anderson, Indiana. Hopkins won several hundred dollars from Owens in a dice game. While on the phone with Hopkins' brother, Owens confirmed that he was losing money to Hopkins and said that he "would get it back later on."

At some point that night, Owens obtained a key for Janice Jordan's apartment, and the four men went there. While Hopkins was sitting and talking to his sister on the phone, Owens said to him, "[G]ive me back my mother f****** money n*****." Owens then shot Hopkins in the head. Hopkins stood up holding the back of his head and asked, "[W]hy?" Hopkins then fell to the floor and continued to ask, "[W]hy cuz? Why?" Owens stood over Hopkins, asked him why he was still talking, and shot him in the head a second time. Owens then took money from Hopkins' pocket and told Wilson and Thompson to move the body. Wilson and Thompson dr[agged] Hopkins' body outside. As Owens, Wilson, and Thompson left the apartment, Owens kicked the door twice "to make it look like somebody broke in." Hopkins died as a result of the shooting.

*Owens v. State*, 897 N.E.2d 537, 538 (Ind. Ct. App. 2008) (transcript cites omitted).

[3] The next day, police interviewed Thompson first. Thompson initially told police that when he, Owens, and Wilson left the apartment, Hopkins was alive. However, after Thompson's mother joined the interview and told her son to tell the truth and police aggressively interrogated Thompson and suggested several times that Owens was the one who shot Hopkins, Thompson told police that Owens shot Hopkins. Thompson was arrested. At Owens's trial, Thompson—who was facing only a charge for Class C felony assisting a criminal—admitted that he and Wilson moved Hopkins's body.

[4] Police then interviewed Wilson and Owens. Initially Wilson told police that Thompson was the shooter. According to Wilson, Owens told him to blame Thompson because then they would both "walk[] out the police station." Tr. p.

800. Wilson was arrested for murder. The next day, Wilson asked to speak with police again; this time, he said Owens was the shooter. Then, in March 2007, Wilson spoke with the press and claimed that he had lied before when he told police that Owens was the shooter. Wilson said he lied because that is what police wanted him to say. At Owens's trial, Wilson—who was also facing only a charge for Class C felony assisting a criminal—admitted that he lied to the press and claimed that Owens was the shooter. Wilson also admitted that he and Thompson moved Hopkins's body.

[5] Likewise, Owens told police that Thompson was the shooter.[1] Owens admitted that he and Wilson moved Hopkins's body.

[6] The State charged Owens with murder and Class A felony robbery. Attorney Jeffrey Lockwood, who had practiced criminal law for over thirty-five years, *see* P-C Tr. p. 9-10, represented Owens at trial. Owens's theory of defense was that Thompson—not Owens—shot and robbed Hopkins and that Thompson and Wilson were not credible when they implicated Owens as the shooter. Detective Kris Ockomon—one of the police officers who interrogated Thompson, Wilson, and Owens—testified at trial. During the cross-examination of Detective Ockomon, Attorney Lockwood elicited information that Thompson had never been to jail before:

---

[1] Although the State argues that Owens said "Peasy" was the shooter, Owens then clarified for police that "Perry [Thompson]" and Peasy were the same person. Tr. p. 684.

[Attorney Lockwood]:     Do you remember ah, sir and again, I'll be happy to show you this to . . . refresh your recollection. Ah, this is page Fifty (50), beginning on line One (1). Mr. Thompson says, I've never been to jail. And then question: Never been in jail? Ah, this is the first time you're going to do for murder. Answer: I ain't no gangster. Well you are now. Looks to me like you're a gangster. How old are you, Twenty Two (22)? Yeah. Both of us have been policemen longer than you've been alive.

* * * * *

[Attorney Lockwood]:     Do you remember being in the room at the same time this statement . . . .

[Detective Ockomon]:     If that's what it reflects in the transcript sir from this, the DVD th[en] I say yes, I said that.

*Id.* at 646. Attorney Lockwood pointed to other parts of Thompson's interrogation where Detective Ockomon and another officer told Thompson: (1) "You look to me like a cold blooded killer. No remorse. Not even shedding a tear."; (2) "[Y]ou're pretty cold man. I'll give you credit. You're one of the coldest characters I've come across in a while."; and (3) "[H]e's got killer's eyes see. He'd just as soon kill you as look at you. Look at him." *Id.* at 647, 648, 653. During closing argument, Attorney Lockwood argued that Detective Ockomon was aggressive during Thompson's two-hour interrogation and used commonly known interrogation tactics to get him to implicate Owens as the shooter. Attorney Lockwood also argued that Thompson wanted the

interrogation to end, and Detective Ockomon gave him a "clue" by suggesting several times that Owens was the shooter. *Id.* at 1184-87.

[7] After a five-day jury trial, the jury found Owens guilty as charged. The trial court sentenced him to sixty years for murder and fifty years for robbery, to be served consecutively, for an aggregate term of 110 years. Owens appealed, arguing that his convictions for murder and Class A felony robbery constituted double jeopardy. We agreed and remanded with instructions for the trial court to reduce his robbery conviction to a Class C felony and resentence him accordingly. *Id.* On remand, the trial court sentenced Owens to sixty-five years for murder and eight years for Class C felony robbery, to be served consecutively, for an aggregate term of seventy-three years. Owens appealed his new sentence, and we affirmed. *Owens v. State*, 916 N.E.2d 913 (Ind. Ct. App. 2009).

[8] Owens filed a pro se petition for post-conviction relief in 2009, which was amended by counsel in 2014, alleging that Attorney Lockwood rendered ineffective assistance of counsel at trial. Specifically, Owens claimed that during Attorney Lockwood's cross-examination of Detective Ockomon, Attorney Lockwood referenced Detective Ockomon's interrogation of Thompson, during which Thompson said he had never been to jail. According to Owens, "[s]uch evidence bolstered Thompson's character and harmed the defense that Thompson was the shooter." Appellant's P-C App. p. 51.

The post-conviction court held a hearing. At the hearing, Attorney Lockwood testified that his defense theory was that "Thompson had done it and the police had . . . put a thumb on him and really aggressively questioned him [t]o get him to implicate Mr. Owens because he didn't have a record, but Mr. Owens . . . did." P-C Tr. p. 5. Defense counsel then asked Attorney Lockwood if "volunteering th[e] information [about Thompson's lack of criminal history was] unhelpful . . . to the overall strategy?" *Id.* at 6. Attorney Lockwood explained:

> The only reason I brought up that part of the conver[sation was because] [t]here may have been something else in there in that general vicinity that I thought I wanted to confront the detective with. It was a pretty aggressive cross examination. But I didn't think it was hurtful to the defense because it just went to show that he was the easy guy to let off, and so they wanted him and they tried to scare him or [coerce][2] him. I may say into saying [sic] that [Owens] was the shooter instead of taking responsibility for himself. In other words I didn't think it was a very thorough or a very fair investigation.

*Id.* at 6-7. Although Attorney Lockwood acknowledged that he did not point out Thompson's lack of criminal history again during closing argument,[3] he

_____

[2] The transcript actually reads "course"; however, taken in context, Attorney Lockwood most likely said "coerce." *See* P-C Tr. p. 6.

[3] The State, however, relied on Thompsons's lack of criminal history during its closing argument:

> This was not a kid who was sitting around engaged in a lot of illegal activity. And in fact [Thompson], if you'll recall the testimony. It's undisputed. Has no criminal history at

claimed that there was no "doubting what my strategy was": to prove that Thompson was the shooter. *Id.* at 7. When pressed again as to whether Thompson's lack of criminal history was hurtful to the defense, Attorney Lockwood said:

> I don't know if it helped or hurt. It was just part of what I said in carrying out . . . my strategy of the defense. . . . There weren't very many options. You couldn't argue self defense, you couldn't argue alibi. We had to try to show that the facts more pointed toward[] . . . Mr. Thompson than [they] did to Mr. Owens.

*Id.* at 8. Attorney Lockwood added that other than putting things in context, he "didn't intentionally ask that question or bring it to the attention of the jury." *Id.* at 9.

[10] Following the hearing, the post-conviction court issued findings of fact and conclusions of law denying relief.[4] Specifically, the post-conviction court concluded:

---

all. Doesn't have any criminal history. Never been in trouble before. Not as a juvenile. Not as an adult. Never been in any trouble.

Tr. p. 1137-38.

[4] Owens points out that the post-conviction court's findings of fact and conclusions are law are a verbatim reproduction of the State's proposed findings of fact and conclusions of law. However, the Indiana Supreme Court has stated that although it does not "encourage post-conviction judges to adopt wholesale the findings and conclusions of either party," it "decline[s] to find bias solely on that basis." *Pruitt v. State*, 903 N.E.2d 899, 940 (Ind. 2009). Rather, the critical inquiry is whether the findings adopted by the court are clearly erroneous. *Id.*

7. Trial counsel was not ineffective when on cross examination of Detective Kris Ockomon, he referenced Thompson's interview where it was stated that Thompson had never been to jail. Lockwood testified that it was a defense strategy to show the intense and aggressive interview of Thompson by police to get him to implicate Owens. Lockwood testified that it was a strategy to show the investigation was not thorough or fair and that it went down the wrong path. Lockwood did not highlight the statement specifically on its own, but merely included it as part of Thompson's statement in support of the defense theory. Lockwood['s] strategic decision to use this part of Thompson's statement was trial strategy to call into question the investigation and hopefully achieve doubt. Even if the strategy was unsuccessful and might appear questionable after the fact, it was not so deficient or so unreasonable as to fall outside an objective standard of reasonableness. Owens has not shown that Lockwood's performance fell below an objective standard of reasonableness.

Appellant's P-C App. p. 77.

[11] Owens now appeals.

# Discussion and Decision

[12] Owens contends that the post-conviction court erred in denying him relief. In post-conviction proceedings, the petitioner bears the burden of proof by a preponderance of the evidence. Ind. Post-Conviction Rule 1(5); *Henley v. State*, 881 N.E.2d 639, 643 (Ind. 2008). When appealing from the denial of post-conviction relief, the petitioner stands in the position of one appealing from a negative judgment, and the standard of review is rigorous. *Fisher v. State*, 810

N.E.2d 674, 679 (Ind. 2004); *see also Trujillo v. State*, 962 N.E.2d 110, 113 (Ind. 2011). "To prevail on appeal from the denial of post-conviction relief, a petitioner must show that the evidence as a whole leads unerringly and unmistakably to a conclusion opposite that reached by the post-conviction court." *Kubsch v. State*, 934 N.E.2d 1138, 1144 (Ind. 2010), *reh'g denied.* Here, the post-conviction court made findings of fact and conclusions of law in accordance with Indiana Post-Conviction Rule 1(6). "A post-conviction court's findings and judgment will be reversed only upon a showing of clear error—that which leaves us with a definite and firm conviction that a mistake has been made." *Ben-Yisrayl v. State*, 729 N.E.2d 102, 106 (Ind. 2000) (quotation omitted), *reh'g denied.* "The post-conviction court is the sole judge of the weight of the evidence and the credibility of witnesses." *Woods v. State*, 701 N.E.2d 1208, 1210 (Ind. 1998), *reh'g denied.* Accordingly, we accept the post-conviction court's findings of fact unless they are clearly erroneous, but we do not defer to the post-conviction court's conclusions of law. *Wilson v. State*, 799 N.E.2d 51, 53 (Ind. Ct. App. 2003).

[13]     To establish a post-conviction claim alleging a violation of the Sixth Amendment right to effective assistance of counsel, a defendant must establish the two components set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *See Williams v. Taylor*, 529 U.S. 362, 390 (2000). "First, a defendant must show that counsel's performance was deficient." *Strickland*, 466 U.S. at 687. This requires a showing that counsel's representation fell below an objective standard of reasonableness and that counsel made errors so serious that counsel

was not functioning as "counsel" guaranteed to the defendant by the Sixth Amendment. *Id.* "Second, a defendant must show that the deficient performance prejudiced the defense." *Id.* This requires a showing that counsel's errors were so serious as to deprive the defendant of a fair trial, meaning a trial whose result is reliable. *Id.* To establish prejudice, a defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is one that is sufficient to undermine confidence in the outcome. *Id.* Because the deficient-performance and prejudice prongs are separate and independent inquiries, a defendant's failure to establish either prong will cause the claim to fail. *State v. Greene*, 16 N.E.3d 416 (Ind. 2014).

[14] Owens argues that Attorney Lockwood was deficient because "he volunteered information harmful to Owens's defense"—specifically, that Thompson had never been in jail. Appellant's Br. p. 6. Counsel is afforded considerable discretion in choosing strategy and tactics. *Timberlake v. State*, 753 N.E.2d 591, 603 (Ind. 2001). This is because even the best and brightest criminal defense attorneys may disagree on ideal strategy or the most effective way to represent a defendant. *Id.* Accordingly, we do not "second-guess" strategic decisions requiring reasonable professional judgment even if the strategy in hindsight did not serve the defendant's interests. *State v. Moore*, 678 N.E.2d 1258, 1261 (Ind. 1997). And rather than focusing on isolated instances of poor tactics or strategy in the management of a case, the effectiveness of representation is determined

based on the whole course of attorney conduct. *Id.* In fact, "[f]ew points of law are as clearly established as the principle that tactical or strategic decisions will not support a claim of ineffective assistance." *Conder v. State*, 953 N.E.2d 1197, 1204 (Ind. Ct. App. 2011).

[15] The record shows that Attorney Lockwood zealously defended Owens at trial. He subjected both Thompson and Wilson to lengthy and vigorous cross-examinations. At the post-conviction hearing, Attorney Lockwood explained that he did not have many options in defending Owens. So the defense strategy was that Thompson—not Owens—was the shooter, but police focused their attention on Owens instead. Attorney Lockwood explained that police did this by trying to "scare" or "coerce" Thompson—who was "the easy guy to let off" because he did not have a criminal history—into implicating Owens. P-C Tr. p. 6. Attorney Lockwood also highlighted other portions of Thompson's interrogation where police accused him of being a "gangster" with "tats" on him and "a cold blooded killer" with "[n]o remorse." Tr. p. 647, 648. Although Attorney Lockwood's strategy did not prove successful, it is the very kind of strategic decision that we will not second guess on appeal. Accordingly, we conclude that Attorney Lockwood was not deficient.[5] We therefore affirm the post-conviction court.

---

[5] Even if we found that Attorney Lockwood's performance was deficient, we find that Attorney Lockwood's deficient performance did not prejudice the defense. That is, Owens has failed to prove that but for Attorney Lockwood's one comment about Thompson's lack of criminal history, the result of the proceeding would have been different. *See Strickland*, 466 U.S. at 694.

Affirmed.

Baker, J., and Robb, J., concur.